■ HERMAN BUGGE, Appellant, v HAROLD W. SWEET, Respondent. — Appeal (1) from an order of the Supreme Court at Trial Term (Harlem, J.), entered May 21, 1981 in Otsego County, which, *inter alia,* granted defendant's motion to set aside the verdict rendered in favor of plaintiff and directed a verdict in favor of defendant, and (2) from the judgment entered thereon. On May 30, 1975, plaintiff was injured in a motor vehicle accident and, thereafter, commenced this action to recover for personal injuries. The case proceeded to trial and at the completion of plaintiff's case defendant contended that plaintiff had failed to establish that he had suffered a serious injury within the meaning of subdivision 4 of section 671 of the Insurance Law (all references hereinafter are to the Insurance Law) as it read at the time of the accident. Decision was reserved as was the case on defendant's motion for a directed verdict at the close of all of the evidence. The case was submitted to the jury which rendered a verdict in the sum of $10,000 for plaintiff. Defendant then renewed his prior motions and further moved to set aside the verdict as being against the weight of the evidence. The court granted the motions and directed judgment for defendant and plaintiff appeals. Perusal of the record demonstrates that plaintiff had a congenital low back abnormality which rendered his lower back subject to symptomatic injuries by exposure to limited trauma and that plaintiff had suffered serious injury to the low back area as a result of successive compensable industrial accidents occurring in 1973 and 1974. In order to improve the mechanical functions of his back and to eliminate the intense pain he was experiencing, a spinal fusion was carried out in January of 1975. Plaintiff was progressing satisfactorily but was still certified as totally disabled and receiving workers' compensation benefits therefor when, on May 30, 1975, as he moved his vehicle from a stopped position, his car was struck at the driver's door. Five days after the accident plaintiff related the incident to his doctor who conducted a thorough examination including the taking of X rays. After examining the X rays which, according to the doctor's testimony and reports, showed no damage or disturbance to the fusion site, the doctor diagnosed the injury as a lumbo-sacral strain and prescribed analgesics and mild tranquilizers for relief. He indicated in a report that the patient had "recovered" in March of 1976. Plaintiff then returned to work, but within a few weeks, on May 17, 1976, was injured in a third industrial accident and in June of 1978 underwent further surgery for removal of an "impingement", a few millimeters of bone, from the fusion mass. Plaintiff is now self-employed in the lumber business and engaged in the buying and scaling of logs. Subdivision 1 of section 673, insofar as relevant here, provides that there shall be no recovery except in the event of serious injury, and subdivision 4 of section 671, as written at the time of the accident, defined "serious injury" as a permanent

loss of use of a body organ, member, function or system. Accordingly, it was plaintiff's clear burden to establish by a fair preponderance of the credible medical evidence that the injury complained of was both permanent in nature and causally related to the occurrence (cf. *Hezekiah v Williams,* 81 AD2d 261; see, also, *Licari v Elliott,* 85 AD2d 596). We find no such proof present in this record. The testimony of plaintiff's doctor was so burdened and infected with doubt and uncertainty, vacillation, lack of medical certainty, speculation and irresolution as to collapse and crumble from its own weight, and provided no competent proof as to either permanency or causality. He first diagnosed the injury as a muscle strain which he defined as a "waste basket" term and months later reported to the carrier that plaintiff had suffered a muscle strain and recovered. On cross-examination he conceded that the X rays taken after the motor vehicle accident showed no disturbance of or damage to the fusion mass and that after the second surgical procedure he could not say with reasonable medical certainty that the muscle strain caused or contributed to the "impingement". While he expressed the thought that all of the various accidents contributed to a permanent partial disability of 25%, a quarter of which he attributed to the muscle strain, he testified that he came up with the apportionments with the help of the administrative law judge. After a motion to strike his testimony and in response to a question from the Trial Judge, he replied that the motor vehicle accident "I think accounted for one hundred percent of his disability for ten months * * * that is the only way I can answer that *from my own determinations*" (emphasis added) and later testified that the process of apportionment is arbitrary at best and that he could not separate one event from the other. Such testimony, if it establishes anything, establishes a nonpermanent injury and fails to establish a prima facie case. On this record it must be determined that there was no valid line of reasoning by which the jury could have concluded that plaintiff suffered a permanent loss of use of a body organ, member, function or system as a result of the motor vehicle accident (see *Cohen v Hallmark Cards,* 45 NY2d 493; *Hezekiah v Williams,* 81 AD2d 261, 266, *supra*). Plaintiff has failed as a matter of law to establish the threshold of subdivision 4 of section 671 in effect at the time of the motor vehicle accident. Order and judgment affirmed, with costs. Kane, J. P., Main, Casey and Yesawich, Jr., JJ., concur.

Mikoll, J., dissents and votes to reverse in the following memorandum.

Mikoll, J. (dissenting). I respectfully dissent. In my view, the medical evidence presented by plaintiff's doctor, Dr. James Elting, was sufficient to create an issue of fact for the jury's consideration and the trial court erred in directing the verdict. I would therefore reverse the judgment entered below and reinstate the complaint and the jury verdict. The legal principles to be applied in evaluating motions of this nature are clear. It is a basic tenet of our law that " 'it cannot be correctly said in any case where the right of trial by jury exists and the evidence presents an actual issue of fact, that the court may properly direct a verdict' [citations omitted]" (*Cohen v Hallmark Cards,* 45 NY2d 493, 499). The evidence must be viewed in the light most favorable to the nonmoving party on such motions (*Wessel v Krop,* 30 AD2d 764, 765). Examining the testimony of plaintiff's medical expert in conjunction with the court's instructions, it is clear that a question of fact was presented for the jury to resolve. Doctor Elting testified that plaintiff after the auto accident exhibited new pain and tenderness in the lumbosacral area where there had been none the month before. He stated that "the sudden force applied across a maturing fusion mass is going to cause some alteration, whether it be external to the new bone or internal and whatever the exact physiologic reason might be, plaintiff did sustain a setback". Dr. Elting further testified, "I think all of the situations

that have been mentioned in this patient's history are interrelated. I think that there is no real way to separate one event from another or to discount one event from another or to discount one event as being irrelevant to the course of this patient's low back disability * * * all of these factors are interrelated." The doctor stated that plaintiff's permanent disability was probably in the 25% range. In reply to a question by the court, Dr. Elting opined that the auto accident contributed to plaintiff's present disability and that there would always be some effect in a low back situation of this type. In the doctor's view, all the injury situations were cumulative and contributed to the ultimate progression of the back problem. Despite Dr. Elting's somewhat conflicting statements elicited on cross-examination which weakened his direct testimony, the doctor never recanted his previous testimony and the jury would be free to reconcile and resolve any inconsistencies or apparent conflicts in the evidence presented.