GEORGE ALLAIN et al., Appellants, v LES INDUSTRIES PORTES MACKIE, INC., Also Known as MACKIE DOORS INDUSTRIES, INC., et al., Respondents, et al., Defendant. [793 NYS2d 198]—

Carpinello, J. Appeals from two judgments of the Supreme Court (Ferradino, J.), entered February 19, 2004 and March 26, 2004 in Saratoga County, upon a verdict rendered in favor of defendants Les Industries Portes Mackie, Inc. and Adirondack Overhead Door Company.

The instant action sounding in products liability, negligence and breach of warranty stems from a March 1999 accident wherein a commercial overhead garage door fell injuring the right forearm of plaintiff George Allain (hereinafter plaintiff) at his place of employment.[1] The door had been installed approximately two years earlier by its manufacturer, defendant Les Industries Portes Mackie, Inc. (hereinafter Mackie), and

---

1. Plaintiff's wife has a derivative cause of action.

had been serviced in the month preceding the accident by defendant Adirondack Overhead Door Company. Plaintiffs' theory of liability against Mackie was that the overhead door system was defective in that it failed to include any provision for maintaining adequate cable tension and that the lack of such tension caused the cables to despool from their drums and the door to fall. With respect to Adirondack, plaintiffs alleged that, having serviced the door prior to the accident, it failed to correct this dangerous condition.

After trial, a verdict was entered in favor of defendants, the jury having concluded that no defendant was negligent, that no defendant breached any warranties, that the drum on the door was not defective and that, although Mackie's overhead door system was defective in its design, installation or warnings, this defect was not a substantial cause of plaintiff's injuries. Plaintiffs appeal the judgments rendered in favor of Mackie and Adirondack and we affirm.

We are unpersuaded by plaintiffs' claim that certain purportedly erroneous rulings by Supreme Court affected the jury's determination. First, we are satisfied that Supreme Court did not abuse its discretion in failing to provide a missing witness charge for the expert witnesses that Mackie and Adirondack had each disclosed during discovery but opted not to call at trial. Neither expert would have provided noncumulative testimony to that of other witnesses and hence the request was properly denied (*see e.g. Goverski v Miller*, 282 AD2d 789, 791 [2001]; *Wilkie v New York City Health & Hosps. Corp.*, 274 AD2d 474, 475 [2000], *lv denied* 96 NY2d 705 [2001]; *DeFreese v Grau*, 192 AD2d 1019, 1021 [1993]).

We similarly find no merit to plaintiffs' claim that Supreme Court failed to appropriately sanction Adirondack for failing to preserve the broken cables. Indeed, "the issue of spoliation of evidence is within the trial court's purview" (*Jackson v Gas Co.*, 2 AD3d 1104, 1106 [2003]; *see* CPLR 3126; *Gilbert v Albany Med. Ctr.*, 13 AD3d 753 [2004]). Here, the record reveals that the Adirondack employee who serviced the door the day after plaintiff's accident discarded all remnants from this service call (i.e., two drums, one of which was broken, the broken cables and some slightly damaged rollers), as well as the remnants from all other service calls that day, into a dumpster at the Adirondack shop at the end of day, as was his usual practice. According to this employee, it was only the next day that he was told by his boss to retrieve the broken drum and cables because of concerns about a lawsuit. While he was able to find the broken drum, he was unable to distinguish the cables at is-

sue from all the other discarded cables in the bin. Under these circumstances, we are satisfied that the adverse inference instruction given to the jury was an appropriate remedy and the court did not abuse its discretion in rejecting plaintiffs' request for a harsher sanction (*see e.g. Lawrence Ins. Group v KPMG Peat Marwick*, 5 AD3d 918 [2004]; *Barber v Kennedy Gen. Contrs.*, 302 AD2d 718 [2003]).[2]

Next, plaintiffs attack the jury verdict on both legal sufficiency and weight of the evidence grounds. Applying the test of whether "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]), we reject the contention that the verdict was based on legally insufficient evidence. Likewise, as to the separate inquiry concerning whether the jury's verdict was against the weight of the evidence, we are unable to conclude that the evidence so preponderated in favor of plaintiffs that the jury could not have reached the verdict in favor of each defendant on any fair interpretation of it (*see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]).

Suffice it to say, the sole expert witness called to establish plaintiffs' theories of liability against Adirondack and Mackie was severely undermined on cross-examination. Given the serious omissions and/or flaws in this expert's opinions, the jury was certainly entitled to disregard his testimony (*see e.g. Fazzone v Gourlay*, 1 AD3d 678 [2003]).[3] Moreover, the defense theory of the case from the onset of the trial was clear and unwavering, namely, that plaintiff's limited recollection of events was simply unworthy of belief. Plaintiff testified that he returned to the shop late in the afternoon on the day of the accident and successfully opened the door about two thirds of the way up before intentionally stopping it from an inside remote. After putting away materials, he needed to return to his vehicle

2. Supreme Court charged the jury that it could "draw the strongest inference against" Adirondack if it found, inter alia, that Adirondack failed to offer a reasonable explanation for its failure to retain and produce the cables.

3. To the extent that plaintiffs specifically argue that the jury's finding of no proximate cause could not have been reached upon any fair interpretation of the evidence, we are again unpersuaded. While the jury learned that the manual provided to plaintiff's employer at the time of the door's installation was entirely in French and pertained to the installation of residential doors (as opposed to the installation *and* maintenance of commercial doors), this factor alone may have provided the basis upon which the jury determined that the overhead door system was defective in its "design, installation or warnings." The jury could nonetheless have found that this particular defect was not a substantial cause of plaintiff's injuries.

and thus recalls exiting the garage door. He testified that he recalls nothing else except waking up on the ground with his right arm pinned under the door.

Defendants attack this series of events with evidence that the door had not been working since approximately 8:30 A.M. that day, that no repairs had been made to it between 8:30 A.M. and the time of plaintiff's accident, that the position of plaintiff's body underneath the door was entirely inconsistent with his version of events, that the damage to the door, or lack thereof, was inconsistent with the claim that it fell a distance of 8 to 9 feet and that both cables appeared to have been intentionally cut. Indeed, evidence was presented that in the month preceding the accident, a garage door cable had been cut at the shop to get the door to close. Defendants further stressed the unlikelihood that both cables had despooled at precisely the same time.

Defendants alternatively argued that despooling could have been caused by the door coming into contact with objects placed too close to its path. Indeed, there was evidence that debris had been permitted to accumulate in the area of the subject door about which plaintiff's employer had been cautioned in the past. Moreover, the damage to the door that day was consistent with the door getting jammed in the tracks and cocking, as opposed to having fallen straight down. Given all of this evidence, we cannot say that the verdict was legally insufficient or against the weight of the evidence.

Plaintiffs' remaining contentions have been reviewed and determined to be without merit.

Cardona, P.J., Crew III, Mugglin and Kane, JJ., concur. Ordered that the judgments are affirmed, with one bill of costs.