Davis, J.
(dissenting). I respectfully dissent. In my opinion, the decision of my colleagues in the majority to set aside the jury’s determination and direct a verdict in favor of the defendants improperly usurps the jury’s fact-finding function and injects their own view of the evidence into the proceedings based upon their disagreement with the jury’s findings rather than upon their desire to meet this court’s obligation to ensure a fair verdict. For those reasons, I respectfully dissent and hold that the trial court’s denial of defendants’ motion pursuant to CPLR 4404 (a) should be affirmed as defendants did not demonstrate their entitlement to judgment as a matter of law or that the verdict was against the weight of the evidence.
The power of the court to set aside a jury verdict is discretionary and such discretion must be exercised cautiously (see Nicastro v Park, 113 AD2d 129, 133 [2d Dept 1985]). Such authority is codified in CPLR 4404 (a) which provides, as relevant here, that
“the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence.”
In order to sustain a determination that a jury verdict is not supported by sufficient evidence as a matter of law a court is required to find upon the evidence presented that there is “no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury” (Cohen v Hallmark Cards, 45 NY2d 493, 498-499 [1978]). In essence, a verdict should not be directed unless there is only one possible conclusion which could be reached based upon the evidence (see generally McDermott v Coffee Beanery, Ltd., 9 AD3d 195, 210 [1st Dept 2004, Saxe, J., dissenting]).
The New York City Human Rights Law (Administrative Code of City of NY § 8-107 [1] [a]), under which plaintiff is pursuing his claims, provides that it is an unlawful discriminatory practice for an employer or employee to discharge a person from employment based upon that person’s actual or perceived sexual orientation. It is well settled that the plaintiff in an employment discrimination action bears the initial burden of establish *30 ing a prima facie case by demonstrating that he/she is a member of a protected class, that he/she was qualified to hold the position from which he/she was discharged and that the discharge occurred under circumstances giving rise to an inference of discrimination (see McDonnell Douglas Corp. v Green, 411 US 792, 802 [1973]). Once a prima facie case has been established, a presumption arises that the employer unlawfully discriminated against the plaintiff and the burden shifts to the defendant employer to rebut the presumption by articulating some legitimate, nondiscriminatory reasons to support its employment decision. If such evidence is produced to rebut the presumption of discrimination, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer’s reason was a pretext for discrimination (see Ferrante v American Lung Assn., 90 NY2d 623, 629-630 [1997]).
Here, the Civil Court (Faviola Soto, J.) in ruling on defendants’ motion for summary judgment denied so much of such motion as sought summary judgment dismissing plaintiffs first cause of action for discrimination based upon sexual orientation. This court affirmed (2002 NY Slip Op 50060[U] [2002]) that part of the Civil Court’s order finding based upon the parties’ submissions that there were issues of fact as to whether defendant New York University Medical Center’s (NYUMC) stated reason for plaintiffs termination was just a pretext for discrimination. The Appellate Division, First Department, unanimously affirmed this court’s order stating: “While defendants have set forth evidence of a legitimate, independent, nondiscriminatory reason to support the decision to terminate plaintiffs employment, specifically, a reorganization, plaintiff has responded with evidence sufficient to raise a triable question of fact as to whether the proffered reason is a mere pretext for discrimination” (Taylor v New York Univ. Med. Ctr., 2 AD3d 244 [1st Dept 2003] [citations omitted]). It is generally held that the denial of a motion for summary judgment is not an adjudication on the merits and establishes nothing except that summary judgment is not warranted based upon the proof before the court at that time (see Metropolitan Steel Indus., Inc. v Perini Corp., 36 AD3d 568 [1st Dept 2007]; but see Matter of Sakow, 45 AD3d 314 [1st Dept 2007]; American Guar. & Liab. Ins. Co. v CNA Reins. Co., Ltd., 42 AD3d 338 [1st Dept 2007]). Thus, while sound policy and precedent militates against the application of the law of the case doctrine to the Appellate Division’s factual determinations on the prior appeal (id.), the plaintiff appears to acknowledge *31 that defendants’ trial evidence sufficiently rebutted plaintiff s prima facie showing of discrimination and, therefore, such issue will not be reexamined here. Hence, the key issue on this appeal is whether plaintiff proved by a preponderance of the evidence that defendants’ stated economic reasons for terminating plaintiffs employment were false and a pretext for discrimination and that discrimination based upon sexual orientation was the real reason behind his termination.
Contrary to defendants’ contentions and the findings of the majority, there was ample evidence that defendant Ferrara was responsible for instigating NYUMC’s decision to discharge plaintiff and that plaintiffs sexual orientation was a determining factor in that decision. The testimony of plaintiffs highly respected superior Martin Begun, NYUMC’s vice-president of external affairs until his retirement in August 1997 indicated that plaintiff’s performance while employed at NYUMC was outstanding and exceptional. There was substantial evidence that after a biography of the composer Leonard Bernstein which disclosed plaintiffs homosexual relationship with Bernstein was circulated among staff at NYUMC plaintiff was excluded from meetings that he had previously attended. Plaintiff was also subjected to insulting gestures and comments, many of them initiated by defendant Ferrara, in derogation of plaintiff’s homosexuality.
Particularly damaging to defendants’ reasoning that plaintiff was laid off for financial reasons was the testimony of Agile Faust, the executive assistant to Myra Biblowit, the vice-president for external affairs to whom defendant Ferrara reported, that when asked by Biblowit about plaintiffs job description Ferrara responded that plaintiff “did nothing”; plaintiffs testimony that just before he was terminated Biblowit told plaintiff that it was not going to work out between him and defendant Ferrara thereby implying that the termination was based upon personal hostility and anti-gay animus; Ferrara’s initials on plaintiffs payroll termination form which could be viewed as evidence of Ferrara’s involvement in plaintiff’s termination especially since none of defendants’ witnesses could identify the initials next to notations on the same form that indicated plaintiff was being laid off and would not be rehired and in view of Ferrara’s well-known hostility toward plaintiff stemming from plaintiffs homosexuality. The totality of the circumstances reflected in the trial testimony concerning defendant Ferrara’s conduct toward plaintiff makes eminently clear *32 that, contrary to the suggestion in the majority’s opinion, Ferrara’s hostility toward plaintiff elevated it above a mere personality conflict. Rather, Ferrara’s behavior was such that it overstepped appropriate bounds in a professional work environment and clearly reflected his distaste for homosexuals. Indeed, even more damaging was testimony that after approximately six years as an employee of NYUMC plaintiff was terminated only four months after plaintiff was placed under Ferrara’s budget.
Moreover, although defendants contended that after Begun’s retirement and plaintiffs termination it was saving two salaries, there was evidence that NYUMC continued to pay Begun’s severance as well as the salary of Biblowit who had partially replaced Begun and an absence of evidence as to whether the budget of the public affairs department had increased or decreased in the year following plaintiff’s termination. Upon review of all of the evidence adduced at trial, I am of the opinion that viewing the evidence in a light most favorable to the plaintiff there is a valid line of reasoning and permissible inferences which could lead rational men and women to the conclusion reached by the jury that plaintiffs termination was based upon his sexual orientation and not on budgetary considerations.
I also reject the defendants’ alternative argument, to wit, that a new trial should be ordered on the grounds that the verdict was against the weight of the evidence. A verdict should not be set aside as against the weight of the evidence unless the evidence so preponderates in favor of the adverse party that the jury could not have reached the verdict on any fair interpretation of the evidence (see Cohen v Hallmark Cards, 45 NY2d at 499). In this regard, great deference should be accorded by appellate courts to the jury’s fact-finding determination since having seen and heard the witnesses and observed their demeanor at trial the jury is in the best position to assess their credibility (see McDermott v Coffee Beanery, 9 AD3d at 206-207). Upon the testimony as detailed above, the jury was entitled to credit the testimony of plaintiff’s witnesses and could have reasonably resolved conflicting testimony of the parties’ respective witnesses in favor of plaintiff to support its finding that defendants terminated plaintiff based upon sexual orientation, and that Ferrara played a determinative role in the decision to terminate plaintiff. Here, the majority’s opinion, substitutes its own opinion of the evidence for that of the jury and thereby improperly intrudes upon the jury’s fact-finding function.
With respect to the introduction of evidence which defendants argue deprived them of a fair trial and which my colleagues in *33 the majority believe would merit a new trial, any error with respect thereto has not been preserved for appellate review.
Turning then to the jury’s award of damages, there was sufficient evidence to demonstrate that plaintiffs termination was in violation of the City Human Rights Law and motivated by evil motive or intent so as to support the punitive damage award (see Umansky v Masterpiece Intl., 276 AD2d 692, 693 [2d Dept 2000]). Nor does the award of compensatory damages as reduced by the trial court materially deviate from what is reasonable compensation (see McIntyre v Manhattan Ford, Lincoln-Mercury, 256 AD2d 269 [1st Dept 1998]).
McKeon, EJ., and Schoenfeld, J., concur; Davis, J., dissents in a separate memorandum.