■ ANTHONY SHALLASH et al., Appellants, v NEW ISLAND HOSPITAL et al., Respondents. [886 NYS2d 812]—In an action to recover damages for medical malpractice, etc., the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Lally, J.), entered January 8, 2009, as, upon reargument, vacated its prior determination in an order entered May 15, 2008, granting those branches of the defendants' separate motions which were pursuant to CPLR 4404 (a) to set aside a jury verdict on the issue of liability as contrary to the weight of the evidence and for a new trial, and thereupon granted those branches of the defendants' separate motions which were pursuant to CPLR 4404 (a) to set aside the verdict on the issue of liability as unsupported by legally sufficient evidence and for judgment as a matter of law.

In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Nassau County (Lally, J.), entered April 2, 2009, which, upon an order of the same court entered January 8, 2009, inter alia, granting those branches of the defendants' separate motions which were for leave to reargue those branches of their prior motions which were pursuant to CPLR 4404 (a) to set aside a jury verdict on the issue of liability as unsupported by legally sufficient evidence and for judgment as a matter of law, which had been determined in an order of the same court entered May 15, 2008, and, upon reargument, vacating so much of the determination in the order entered May 15, 2008, as granted those branches of the prior motions which were pursuant to CPLR 4404 (a) to set aside the jury verdict on the issue of liability as contrary to the weight of the evidence and for a new trial, and thereupon granting those branches of the defendants' separate motions which were pursuant to CPLR 4404 (a) to set aside the jury verdict on the issue of liability as unsupported by legally sufficient evidence and for judgment as a matter of law, is in favor of the defendants and against them dismissing the complaint.

Ordered that the judgment is affirmed, with one bill of costs.

The plaintiff Anthony Shallash (hereinafter Shallash) arrived at the defendant New Island Hospital (hereinafter New Island) by ambulance at 10:39 A.M. on November 26, 2000, presenting symptoms and signs of right-sided weakness, difficulty walking, and slurred speech. The defendant Dr. Anthony Carlisi first examined Shallash at 10:45 A.M., and promptly ordered certain tests to be performed, including an electrocardiogram, a chest X-ray, and a computed tomography (hereinafter CT) scan. The last image on the CT scan was taken at 11:32 A.M., and confirmed that Shallash had suffered a stroke caused by a blood clot in the brain.

Shortly after Shallash's arrival at New Island, his wife ar-

rived and immediately demanded that her husband be transferred to Long Island Jewish Medical Center (hereinafter LIJMC). While tests were being performed on Shallash, his primary care physician called Carlisi and requested that Shallash be transferred to LIJMC, stating that he was making the transfer arrangements. Carlisi made a transfer request to LIJMC at 11:15 A.M., and it was accepted by that institution at 11:20 A.M. or 11:30 A.M.

Shallash's wife also demanded that her husband be given tissue plasminogen activator (hereinafter TPA), a drug which can dissolve clots in certain stroke patients, and which must be administered within three hours of the onset of the stroke. Dr. Carlisi determined that the drug was contraindicated in Shallash's circumstance and did not administer it. The ambulance from LIJMC arrived at New Island at 12:36 P.M., left New Island at 12:50 P.M., and brought Shallash to LIJMC at 1:20 P.M. Shallash remained there for 11 days. He has since made a significant recovery, but allegedly sustained permanent injuries.

The plaintiffs commenced this medical malpractice action, alleging three theories of malpractice. They alleged that Carlisi (1) misdiagnosed Shallash, (2) failed to timely administer TPA, and (3) failed to timely transfer Shallash to LIJMC. This last theory was based on the contention that, had Carlisi taken appropriate steps to expedite Shallash's transfer, a physician at LIJMC would have timely administered TPA.

After a trial, a jury determined that Carlisi did not deviate from reasonable medical care by misdiagnosing Shallash or failing to timely administer TPA. It did find, however, a deviation in his failure to timely transfer Shallash, and further found that such deviation was a substantial factor in causing Shallash's injuries. Following the verdict, the defendants moved pursuant to CPLR 4404 (a) to set aside the verdict on the issue of liability as unsupported by legally sufficient evidence, and for judgment as a matter of law or, alternatively, to set aside the verdict on the issue of liability as contrary to the weight of the evidence and for a new trial.

In an order entered May 15, 2008, the Supreme Court held that the jury verdict was inconsistent, inasmuch as a finding that the failure to administer TPA was not a deviation from accepted medical practice was inconsistent with a finding that the failure to transport Shallash for that very purpose was a deviation from accepted medical practice. The court also observed that there was no testimony offered by the plaintiffs that, upon Shallash's timely arrival at LIJMC, TPA would have been administered in any event. On the basis of the inconsistent

verdict, the court granted those branches of the defendants' separate motions which were to set aside the verdict as contrary to the weight of the evidence, and ordered a new trial. All parties moved for leave to reargue.

The Supreme Court thereafter granted reargument and, upon reargument, agreed with the defendants that the plaintiffs had not presented evidence from which a jury could rationally conclude that Carlisi's failure to timely transfer Shallash was a competent producing cause of his injuries. The court therefore vacated its determination in the prior order that the verdict was contrary to the weight of the evidence and that a new trial was warranted, and granted those branches of the defendants' separate motions which were to set aside the verdict as unsupported by legally sufficient evidence and for judgment as a matter of law. The court subsequently entered judgment dismissing the complaint. We affirm.

The Supreme Court did not improvidently exercise its discretion in granting those branches of the defendants' separate motions which were for leave to reargue. Contrary to the plaintiffs' assertions on appeal, the defendants did not raise new arguments in those branches of the motions (*cf.* CPLR 2221 [d]; *Simpson v Loehmann*, 21 NY2d 990, 991 [1968]; *Woody's Lbr. Co., Inc. v Jayram Realty Corp.*, 30 AD3d 590, 593 [2006]; *Gellert & Rodner v Gem Community Mgt., Inc.*, 20 AD3d 388 [2005]; *Spatola v Tarcher*, 293 AD2d 523, 524 [2002]).

To be awarded judgment as a matter of law pursuant to CPLR 4404 (a), a defendant has the burden of showing that, upon viewing the evidence in the light most favorable to the plaintiff, "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Lang v Newman*, 12 NY3d 868, 870 [2009]).

To present a prima facie case of medical malpractice, a plaintiff must establish that the physician's actions deviated from accepted medical practice and that such deviation proximately caused his or her injuries (*see Flaherty v Fromberg*, 46 AD3d 743, 746 [2007]; *Thompson v Orner*, 36 AD3d 791, 791-792 [2007]; *Texter v Middletown Dialysis Ctr., Inc.*, 22 AD3d 831 [2005]). Viewing the evidence in the light most favorable to the plaintiffs and resolving all questions of credibility in their favor (*see Campbell v City of Elmira*, 84 NY2d 505, 509 [1994]; *68-49 Woodhaven Blvd. Holding Corp. v Exxon Mobil Corp.*, 61 AD3d 844, 846 [2009]), there was insufficient evidence upon which a reasonable person might conclude that Carlisi's devia-

tion from accepted medical practice proximately caused Shallash's injuries.

The plaintiffs' experts agreed that TPA could only be administered within three hours of the onset of a stroke. Contrary to the plaintiffs' contention, there is no clear evidence as to when the onset of Shallash's stroke occurred. Moreover, there was no dispute that a determination of whether or not to administer TPA could not be made without the results of a CT scan, which were not available until 11:32 A.M.

The opinions of the plaintiffs' experts that the stroke actually began at 9:30 A.M. were based on statements made by Shallash after his recovery. Any determination by the jury that, in light of Shallash's condition, which included an inability to speak, a physician could have somehow elicited that information from him before 12:30 P.M. on the day of the stroke would be based on sheer speculation (see Nicolosi v Brookhaven Mem. Hosp., 168 AD2d 488, 490 [1990]). It was also speculation for the jury to conclude that anything Carlisi could have done would have resulted in Shallash's arrival at LIJMC in sufficient time for a physician there to make the necessary assessment to administer TPA, or that a physician would have done so. Notably, neither of the plaintiffs' experts testified that he would have administered TPA to Shallash under the circumstances presented at the time. Accordingly, the Supreme Court properly awarded judgment as a matter of law in favor of the defendants.

In light of our determination, we need not reach the parties' remaining contentions. Rivera, J.P., Santucci, Eng and Chambers, JJ., concur.