OPINION OF THE COURT
Francesca E. Connolly, J.
Education Law § 3203 (1) provides that a property owner whose property is intersected by the boundary line between two school districts may, if certain conditions are satisfied, designate the school district of his or her choice, effectively permitting the children residing on the property to attend school in either district. For the reasons that follow, the court finds that, as a matter of law, where the boundary line between two school districts intersects condominium common property but does not *360 intersect any of the individual dwellings, the owners of those condominium units may not designate the school district of their choice, and must attend the school district in which the dwellings are physically located.
Factual and Procedural Background
The Complaint
The plaintiff Steven Palm, suing individually and in his capacity as chairman of the board of directors on behalf of all of the condominium owners of the Pasadena Green Condominium Association (hereinafter the plaintiffs), commenced this action against the Tuckahoe Union Free School District and the Tuckahoe Board of Education (hereinafter collectively the Tuckahoe School District) for a declaratory judgment that the plaintiff owners of the Pasadena Green Condominium (hereinafter Pasadena Green) live in a “borderline property” and, therefore, have the right pursuant to Education Law § 3203 (1) to designate the Tuckahoe School District as their school district of choice. According to the complaint, Pasadena Green is a condominium community that is bisected by the boundary line between the Tuckahoe School District and the Mount Vernon City School District (hereinafter Mount Vernon School District). As an alternative cause of action, the plaintiffs asserted that the Tuckahoe School District should be equitably estopped from denying Pasadena Green owners the right to designate it as their school district of choice.
Prior Motion Practice and Appeal
At a prior stage of this action, the Tuckahoe School District moved to dismiss the complaint insofar as asserted against it, arguing, among other things, that the complaint failed to state a cause of action for declaratory relief because the matter had not yet ripened into a justiciable controversy (see CPLR 3211 [a] [7]). The plaintiffs cross-moved for summary judgment in their favor and an injunction, arguing that Pasadena Green condominium owners may lawfully designate the Tuckahoe School District or, in the alternative, that the Tuckahoe School District should be equitably estopped from denying them the right to so designate.
In an order dated June 10, 2011, this court (Adler, J.) found that the action did not present a justiciable controversy and granted the branch of the Tuckahoe School District’s motion which was to dismiss the complaint insofar as asserted against it for failure to state a cause of action. Having granted dismissal *361 of the action, the court also denied the plaintiffs’ cross motion for summary judgment.
The plaintiffs appealed that order to the Appellate Division, Second Department, which, in a decision and order dated May 15, 2012, held, to the contrary, that the case presented a bona fide justiciable controversy (see Palm v Tuckahoe Union Free School Dist., 95 AD3d 1087, 1089 [2d Dept 2012]). Accordingly, the Second Department modified the June 10, 2011 order and denied the Tuckahoe School District’s motion to dismiss. However, the Second Department affirmed the June 10, 2011 order with respect to the denial of the plaintiffs’ cross motion for summary judgment. Reaching the merits of the plaintiffs’ motion, the Second Department held:
“With respect to the first cause of action, the plaintiffs failed to make a prima facie showing of entitlement to a declaratory judgment as a matter of law by eliminating triable issues of fact, including whether the boundary line between the two school districts intersects real property owned by the plaintiff owners of single-family dwelling units in order to qualify their homes as boundary properties within the meaning of the Education Law.” (Id. at 1090 [citations omitted].)
With respect to the equitable estoppel argument, the Court noted:
“[E]stoppel is generally not available against a municipal defendant with regard to the exercise of its governmental functions or its correction of an administrative error. However, an exception to the general rule applies in ‘exceptional circumstances’ involving the ‘wrongful or negligent conduct’ of a governmental subdivision, or its ‘misleading nonfeasance,’ which ‘induces a party relying thereon to change his position to his detriment’ resulting in ‘manifest injustice.’ ” (Id. at 1090-1091 [citations omitted].)
Applying this rule of law, the Court held that the plaintiff condominium owners failed to eliminate triable issues of fact as to whether there were “exceptional circumstances” to invoke the doctrine of estoppel against the defendants. Specifically, the Court held that the proof submitted by the plaintiffs, consisting of, among other things, “school tax payments to the Tuckahoe District for the 2009-2010 school year and various communications between representatives of the school defendants and *362 certain unit owners at the Pasadena with respect to their designation of the Tuckahoe District” was insufficient to meet their prima facie burden for summary judgment (see id. at 1091). Accordingly, the Second Department denied the plaintiffs’ cross motion for summary judgment.
The Trial
After the Second Department reinstated the action, upon the completion of discovery, the plaintiff filed a note of issue with a demand for a jury trial on all issues. The defendant never moved to strike the jury demand and, therefore, when the parties appeared in the trial ready part, they were directed to select a jury. Thereafter, the matter was referred to the undersigned Justice as ready for trial.
At trial, the plaintiffs offered the testimony of four witnesses, Steven Palm, Theresa Malach, Kelly Giacalone, and Maria Cavanna, three of whom are presently condominium owners at Pasedena Green. The testimony of the plaintiffs’ witnesses was, for the most part, unchallenged by the Tuckahoe School District.
The plaintiff, Steven Palm, testified that he owns and resides at unit 2 of the Pasadena Green with his wife, who is expecting twins (Palm at 14). The homes in Pasadena Green are single family attached townhouses (id. at 14-15). Palm purchased the unit in 1996 or 1997, but he rented out the unit from about 2006 through 2013 (id. at 46-47). Palm also served as the chairman of the Pasadena Green board of directors for approximately six years from 2007 to 2012 (id. at 24). In a prior year, his tenants’ children were permitted to attend schools in the Tuckahoe School District (id. at 24). To accomplish this, Palm, as owner of the unit, had designated the Tuckahoe School District as his district of choice (id. at 24). In 2009, in response to an inquiry from Palm’s tenant, an employee of the Tuckahoe School District by the name of Christina Howe wrote to the tenant informing him that, in order for his children to attend Tuckahoe schools, all that was required was that the landlord (i.e., Palm) write a brief letter to the Mount Vernon School District designating the Tuckahoe School District as his district of choice (id. at 33-34; plaintiffs’ trial exhibit 9). Palm subsequently engaged in conversations with Howe regarding the ability of Pasadena Green owners to designate the Tuckahoe School District as their school district of choice (Palm at 33-36). However, by letter dated June 22, 2012, the Tuckahoe School District informed Palm that, pursuant to the Education Law, his unit was not an owner occupied single family dwelling and, *363 therefore, he could no longer designate the Tuckahoe School District as his district of choice {id. at 26; plaintiffs’ trial exhibit 6). Palm’s certificate of occupancy for his unit identifies it as a single family dwelling (Palm at 43-44).
Pasadena Green paid a total of $71,151.46 in school taxes to the Tuckahoe School District over a period of 10 years from 2003 through 2013 on behalf of the 28 unit owners (id. at 40).[1] Palm described the condominium development as being triangularly shaped, with 28 individual townhouses grouped together into seven groups of two or more attached houses (id. at 48-49). Palm conceded that all of the condominium buildings lie to the south of the boundary line and are located in the Mount Vernon School District (id. at 50-51).
Theresa Malach purchased her unit at Pasadena Green in 1992 (Malach at 65). Although Malach has no children, she was always under the impression that Pasadena Green owners could send their children to Tuckahoe schools (id. at 67, 73). This belief was reinforced by her knowledge that past residents of Pasadena Green had utilized school bus services provided by Tuckahoe schools (id. at 67-68). According to Malach, the ownership and expenses of her condominium unit are nearly identical to typical home ownership and “[t]he only difference between Pasadena Green and a ‘homeowner’ would be that [they] own . . . some of the property in common” (id. at 74). Although the Mount Vernon School District generates an individual tax bill for her unit, the tax bill associated with Pasadena Green common property located in the Tuckahoe School District is presented to the condominium association “as the representative of the 28 [condominium owners]” (id. at 76-77).
Kelly Giacalone purchased her unit at Pasadena Green in 1997 and resides there with her two children, ages 18 and 22 (Giacalone at 8). Although her children went to private school, Giacalone was under the belief that she had a right, if she chose to exercise it, to send her children to Tuckahoe schools (id. at 9-10). In 2011, one of Giacalone’s children received busing services from Tuckahoe, but now that those benefits are no longer *364 provided, she drives the child to school (id. at 10). She has never applied to the Mount Vernon School District for bus services for her children (id. at 12).
Maria Cavanna formerly owned and resided in unit 7 at Pasadena Green (Cavanna at 3). When she purchased the home, the realtor represented to her that children who reside at Pasadena Green could attend Tuckahoe schools (id. at 4, 9). However, years later when she attempted to register her children to attend Tuckahoe schools, she was told they could not register there (id. at 4-5). Cavanna then registered her children to attend a school in Mount Vernon and subsequently sold her home at the Pasadena Green and moved to Eastchester (id. at 8). Cavanna and her husband purchased the unit at Pasadena Green in 2001-2002 for $360,000 and sold it in 2011 for $509,000 (id. at 9, 11).
In addition to the testimonial evidence, the plaintiffs offered into evidence the deeds for each of the 28 condominium owners at Pasadena Green (see plaintiffs’ exhibit 1-A to 1-BB). Each deed describes the property being conveyed in a similar fashion in a “Schedule A” annexed to the deed. In every case, the Schedule A first describes the property constituting the condominium unit (either by reference to the unit number or by a metes and bounds description) and, second, conveys an undivided percentage interest in “the Common Elements of the property described in [the Condominium Declaration]” (see plaintiffs’ exhibit 1-A). Thus, the deed for unit 4-L conveys an undivided 3.934% interest in the Common Elements (see id.), the deed for unit 10-L conveys an undivided 3.8112% interest in the Common Elements (see plaintiffs’ exhibit 1-B), and so forth, so that the percentage interest in the Common Elements of the 28 separate deeds adds up to 100%.
Motion for a Directed Verdict
After the plaintiffs rested, the Tuckahoe School District moved for a directed verdict pursuant to CPLR 4401. The court granted the motion to the extent of dismissing the plaintiffs’ second cause of action for equitable estoppel insofar as brought on behalf of any condominium owner who had not testified in court, since, among other reasons, those owners had failed to put forth any evidence of reliance. However, the court reserved decision on the balance of the motion, after which the defendant rested without calling any witnesses.
The Verdict
The court submitted four questions to the jury, the first of which related to the plaintiffs’ cause of action pursuant to *365 Education Law § 3203, which asked: “Did the plaintiffs establish, by a preponderance of the evidence, that the property intersected by the school district boundary is improved by a single family dwelling unit?” (court exhibit 1). The jury’s unanimous answer to this question was “Yes.” Questions 2 through 4 asked the jury to determine whether the Tuckahoe School District should be equitably estopped from denying Steven Palm, Theresa Malach and her husband Vincent O’Connell, and Kelly Giacalone the right to designate the Tuckahoe School District as their district of choice. The jury unanimously answered these questions “Yes,” finding that the Tuckahoe School District should be equitably estopped from denying them that right.
The Instant Motion
The Tuckahoe School District now moves (1) for an order granting the balance of its motion for a directed verdict pursuant to CPLR 4401 on which the court reserved decision, and (2) to set aside the verdict pursuant to CPLR 4404. The Tuckahoe School District argues that, viewed in the light most favorable to the plaintiff, the evidence is insufficient to establish that the plaintiffs have the right to designate the school district of their choice pursuant to Education Law § 3203 (1), or that the Tuckahoe School District should be equitably estopped from denying them that right. The Tuckahoe School District contends that the statutory phrase “in the case of an owner-occupied single family dwelling unit” must be interpreted as applying to properties improved by a singular dwelling unit. It argues that this statutory phrase does not apply to condominium properties or other types of multiple dwelling units. With respect to the cause of action for equitable estoppel, the Tuckahoe School District contends that the plaintiffs failed to prove the existence of “exceptional circumstances” necessary to obtain equitable estoppel against a municipal defendant. Specifically, the Tuckahoe School District argues that there was no evidence that any of the plaintiffs changed their position or were induced to rely upon representations made by the Tuckahoe School District, and that the plaintiffs’ subjective beliefs that they would be able to designate the school district of their choice are insufficient to support the verdict on equitable estoppel.
In opposition, the plaintiffs contend that the Tuckahoe School District’s motion for a directed verdict was procedurally improper because they made no objection to having the case tried before a jury. On the merits, the plaintiffs contend that Education Law § 3203 grants them a statutory right to desig *366 nate the school district of their choice, and the percentage of property on each side of the boundary line is irrelevant. Rather, the plaintiffs contend that the simple fact that the Pasadena Green property is bisected by the school district boundary line is sufficient. The plaintiffs argue that, since each of the 28 townhouses is individually owned and is a single family dwelling pursuant to the certificate of occupancy, their homes fall within the phrase “an owner-occupied single family dwelling unit” used in the Education Law, and the fact that the statute uses a singular “an” is not determinative. The plaintiffs also cite to the fact that they pay taxes to the Tuckahoe School District, which they argue should afford them the right to designate that school district under the statute. Further, the plaintiffs contend that their reliance upon past incidents where children residing at Pasadena Green received benefits from the Tuckahoe School District warrants a finding of exceptional circumstances.
Analysis
I. The Cause of Action Pursuant to Education Law § 3203
With respect to the plaintiffs’ first cause of action, the Tuckahoe School District’s motion for a directed verdict is granted.
Prior to 1985, Education Law § 3203 (1) stated, in relevant part: “The owner of taxable property that is so located that the boundary line between two school districts intersects the dwelling on said property may designate the school in either of such districts to which the children lawfully residing in said dwelling shall attend . . . .” (Former Education Law § 3203 [1] [emphasis added].) Under the prior statute, the right to designate a school district of choice was extended only where the boundary line intersected “the dwelling” itself, which the court interprets to mean the physical structure constituting the home or residence (see Matter of Velazquez, 52 Ed Dept Rep, Decision No. 16,474 [2013] [finding that a detached garage did not constitute part of “the dwelling”]).
However, in 1985, Education Law § 3203 (1) was amended to add an additional circumstance under which a property owner may designate his or her school district of choice:
“The owner of taxable property that is so located that the boundary line between two school districts intersects (a) the dwelling on said property or (b), in the case of an owner-occupied single family dwelling unit, the property on which the dwelling unit is located may designate the school in either of such *367 districts to which the children lawfully residing in said dwelling on said property shall attend . . . (Education Law § 3203 [1] [emphasis added to show new content]; see L 1985, ch 13.)
Thus, under the statute as presently written, there are two scenarios under which a property owner is permitted to designate his or her school district of choice. First, under subdivision (1) (a), the property owner may designate if the boundary line intersects “the dwelling” (Education Law § 3203 [1] [a]). Second, under subdivision (1) (b), “in the case of an owner-occupied single family dwelling unit,” the property owner may designate where “the boundary line between two school districts intersects . . . the property on which the dwelling unit is located” (Education Law § 3203 [1] [b] [emphasis added]).
Here, since it is conceded that all of the town homes that comprise the Pasadena Green are on the Mount Vernon side of the boundary line and the boundary line does not intersect any of “the dwellings,” it is clear that subdivision (1) (a) is not applicable. Rather, the more pertinent question posed by this case is whether the plaintiffs may designate the school district of their choice pursuant to subdivision (1) (b), which essentially has two requirements: (1) the property must be “an owner-occupied single family dwelling unit,” and (2) the boundary line must intersect “the property” on which the “dwelling unit” is located.
The plaintiffs contend that, since each of their condominium units is a single family home and the boundary line intersects property owned collectively by the plaintiffs, they may designate pursuant to subdivision (1) (b). Conversely, the Tuckahoe School District contends that subdivision (1) (b) is only applicable where the property is improved by a single—not multiple—dwelling unit. For the reasons that follow, the court agrees with the defendants on this issue of law. Applying the law to the facts of this case and granting the plaintiffs every favorable inference based upon the evidence submitted at trial, there is no rational basis upon which the jury could have determined that the subject property was occupied by only one dwelling (see Godlewska v Niznikiewicz, 8 AD3d 430, 431 [2d Dept 2004] [“The proper legal standard for deciding a motion pursuant to CPLR 4401 is whether, granting the plaintiff every favorable inference from the evidence submitted, there was any rational basis upon which a jury could have found for the *368 plaintiff’]). Accordingly, the Tuckahoe School District’s motion for a directed verdict pursuant to CPLR 4401 on the plaintiffs’ first cause of action must be granted.
The plain text of Education Law § 3203 (1) (b) states it is applicable in the case of “an” owner-occupied single family dwelling unit. The court cannot ignore the legislature’s decision to use the singular indefinite article “an” in the statutory text. Indeed, “[singular and plural forms of words will be literally construed in statutes unless it is necessary to depart from strict usage to give effect to the legislative intent” (see McKinney’s Cons Laws of NY, Book 1, Statutes § 252). The court can find no indication in the legislative history of the amendment that the legislature intended subdivision (1) (b) to apply to properties encumbered by more than one dwelling unit. The Sponsor’s Memorandum indicates the rationale behind the amendment of Education Law § 3203:
“At present, inequitable situations often exist where children must go to schools several miles from home, when, in fact, they could attend a nearby school. In rural areas, this difference can be several miles .... “Present law allows that when a school district line intersects a dwelling, the owner may designate which school his children may attend. This bill simply extends this policy to property owners of single family dwellings, by giving them the choice of school districts in cases where they are already paying taxes to two school districts.” (Sponsor’s Mem, Bill Jacket, L 1985, ch 13.)
Nothing in this statement indicates that the statute was intended to apply to properties encumbered by more than one dwelling.
Matter of Velazquez (52 Ed Dept Rep, Decision No. 16,474 [2013]), the only decision the court is aware of that addresses the applicability of Education Law § 3203 (1) (b), persuasively supports the foregoing interpretation of the statute. In that administrative appeal, the Commissioner of the New York State Education Department determined that the petitioners did not live in an “owner-occupied single family dwelling unit” because the record indicated, among other things, that the structure they occupied was “comprised of three separate and distinct liv *369 ing units” each with its own kitchen.[2] Here, as in Velazquez, the plaintiffs’ homes are separate and distinct dwellings and, therefore, they do not fall within the statute.
Further, the property in this case that is intersected by the school district boundary is owned, in percentage increments, by all of the 28 owners of Pasadena Green, and is specifically designated as a “Common Element” (see e.g. plaintiffs’ exhibit 1-A [the deed for unit 4-L conveys an undivided 3.934% interest in the Common Elements]). The Condominium Act defines property owned in common as the property owned in “undivided interest in fee simple absolute” (see Real Property Law § 339-e [5] [definition of “common interest”]) and property separately owned as the “unit” as a separate fee simple interest owned individually by the “unit owner” (see Real Property Law § 339-e [16] [definition of “unit owner”]). Here, because the property intersected by the boundary line is owned in common and is separate and distinct from the dwelling units, it is arguably not encumbered by any dwellings and, even assuming that the property is encumbered by the dwelling units themselves, it is encumbered not by one unit, but by 28.
Moreover, to accept the plaintiffs’ expansive interpretation of Education Law § 3203 (1) (b) with respect to condominium developments could inappropriately incentivize the configuration of new common-interest developments to gain access to neighboring school districts, potentially overwhelming those school districts with new students. Indeed, to hold in the plaintiffs’ favor would allow large developments to gain an improper foothold in neighboring school districts which are not prepared for an influx of new students. While the court recognizes that a property owner’s “motivation is not a proper criterion in interpreting or applying [Education Law § 3203],” this potential consequence gives credence to the court’s belief that the legislature did not intend that “an owner-occupied single family dwelling unit” should encompass a condominium development (see Matter of Crowe v MacFarland, 138 AD2d 788, 790 [3d Dept 1988]). Although in Matter of Crowe v MacFarland the Third Department held that the owner of a four-acre parcel *370 who purchased an adjoining 0.1-acre parcel in a separate school district for the express purpose of gaining access to its schools was entitled to designate that district pursuant to subdivision (1) (b), that case involved a single family dwelling, which is clearly contemplated under the statute.
Accordingly, having granted the Tuckahoe School District’s motion for a directed verdict, the court declares that the plaintiffs are not entitled to designate the Tuckahoe School District as their school district of choice pursuant to Education Law § 3203 (1).
II. Equitable Estoppel Cause of Action
With respect to the plaintiffs’ second cause of action sounding in equitable estoppel, the Tuckahoe School District is entitled to a directed verdict.
In general, the doctrine of equitable estoppel “is not available against a governmental agency in the exercise of its governmental functions” (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 33 [1984]; see also Palm v Tuckahoe Union Free School Dist., 95 AD3d 1087, 1090 [2d Dept 2012]). However, “an exception to the general rule applies in ‘exceptional circumstances’ involving the ‘wrongful or negligent conduct’ of a governmental subdivision, or its ‘misleading nonfeasance,’ which ‘induces a party relying thereon to change his position to his detriment’ resulting in ‘manifest injustice’ ” (Palm v Tuckahoe Union Free School Dist., 95 AD3d at 1091, quoting Landmark Colony at Oyster Bay v Board of Supervisors of County of Nassau, 113 AD2d 741, 744 [2d Dept 1985]).
Here, granting the plaintiffs the benefit of every favorable inference from the evidence submitted at trial (see Godlewska v Niznikiewicz, 8 AD3d 430, 431 [2d Dept 2004]), they failed to establish the existence of exceptional circumstances warranting the invocation of the doctrine of equitable estoppel. The only evidence presented at trial on the issue of whether the Tuckahoe School District had misled anyone was testimony that Steven Palm’s prior tenants had attended Tuckahoe schools, and that another resident had utilized Tuckahoe School District bus services to attend a private school in a prior year. The mere fact that the Tuckahoe School District may have offered services to prior residents does not rise to the level of exceptional circumstances or misleading nonfeasance (see Matter of E.A., 48 Ed Dept Rep 523 [Decision No. 15,936] [“while respondent’s mistake as to the actual school district in which petitioner’s residence was located is unfortunate, it does not bar respondent *371 from later refusing to admit petitioner’s child. Except in limited circumstances not applicable here, equitable estoppel does not apply against a governmental subdivision. A mistake by a school district representing that a certain property is located within the district does not vest any legal right in such students to attend on a tuition-free basis” (citations omitted)]).
Moreover, the plaintiffs failed to present evidence that they changed their position in reliance on representations made by the Tuckahoe School District, or that a manifest injustice has resulted. Accordingly, the Tuckahoe School District’s motion for a directed verdict on the plaintiffs cause of action sounding in equitable estoppel is granted, and the second cause of action is dismissed.
In light of the foregoing, the court need not separately address the branch of the motion which seeks to set aside the jury verdict pursuant to CPLR 4404 (a). In any event, since the trial evidence was legally insufficient to support the verdict, for reasons set forth in this order, the motion is granted and the verdict is set aside in its entirety (see Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978] [court may set aside jury verdict where there is “no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial”]).
Accordingly, it is hereby, ordered that the motion of the defendants Tuckahoe Union Free School District and Tuckahoe Board of Education for a directed verdict pursuant to CPLR 4401 and to set aside the jury verdict pursuant to CPLR 4404 (a) is granted; and it is further adjudged and declared that the plaintiffs are not entitled to designate the Tuckahoe Union Free School District as their school district of choice pursuant to Education Law § 3203 (1); and it is further ordered that all other relief requested and not decided herein is denied.

. On average, the Tuckahoe School District taxes would equate to an annual tax burden of approximately $254.11 per unit owner. Although no testimony or proof was introduced by either party as to the amount of school taxes each unit owner paid to the Mount Vernon School District for their fee simple condominium unit and the balance of the common property located within the Mount Vernon School District, these taxes would have been significantly more than the relatively minimal sum paid to the Tuckahoe School District.

. In Velazquez, the Commissioner went on to consider, in the alternative, whether the “dwelling” itself was intersected by the boundary line such that the petitioners could designate their school district of choice pursuant to subdivision (1) (a), holding that a detached garage did not constitute part of the dwelling. In the case at bar, as discussed above, subdivision (1) (a) is inapplicable since none of the plaintiffs’ dwellings are intersected by the boundary line.