This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------

No. 85  SSM 4
Robert Obey,
          Appellant,
        v.
City of New York,
          Defendant,
New York City Transit Authority,
          Respondent.

          Submitted by Brian J. Isaac, for appellant.
          Submitted by Lawrence Heisler, for respondent.


          Decided April 4, 2017:  On review of
          submissions pursuant to section 500.11 of the
          Rules, order reversed, with costs, and case
          remitted to the Appellate Division, First
          Department, for consideration of issues
          raised but not determined on the appeal to
          that court.  Legally sufficient evidence
          supported the jury's finding that defendant
          New York City Transit Authority was negligent
          and that its negligence was a proximate cause
          of plaintiff's injury.  Chief Judge DiFiore
          and Judges Rivera, Abdus-Salaam, Stein, Fahey
          and Wilson concur.  Judge Garcia dissents and
          votes to affirm, in a memorandum.


GARCIA, J.(dissenting):

          Plaintiff -- while "high on Xanax and Klonopin" -- left

a methadone clinic, fell off a subway platform, and was struck by

a train.  The jury returned a verdict apportioning fault 60% to plaintiff and 40% to defendant New York City Transit Authority (NYCTA), and awarding plaintiff a total of approximately $2 million in damages.  Supreme Court set aside the verdict and dismissed the complaint.  The Appellate Division affirmed.  I agree with both lower courts, and therefore I dissent.

Plaintiff entered the subway station around 11:15 a.m. and was discovered injured on the tracks at 11:58 a.m.  During those forty-three minutes, at least two trains passed through the station.  Neither train operator saw plaintiff, although the operator of the second train reported observing white sneakers on the train tracks.  Plaintiff had no memory of the incident, but contended at trial that the second train caused his injuries, and that the driver of that train had acted negligently.

First, as to causation, plaintiff failed to satisfy his burden that the second train -- and not the first train -- caused his injuries.  Although neither operator believed that his train had hit plaintiff -- and plaintiff had no recollection of the incident -- the physical evidence points solely to the first train as the proximate cause of plaintiff's injuries: what appeared to be bloodstains were discovered on four cars of the first train, while no such stains were discovered on the second train.  In an attempt to refute the physical evidence, plaintiff's expert claimed that the apparent bloodstains may actually have been "grape juice," "pop/soda," or rat blood, and

that the weight and heat of the train may have cauterized plaintiff's wound. Not only are these claims incredible on their face, but they are undermined by plaintiff's own evidence. For instance, plaintiff contends that his wound may have instantly cauterized -- to explain the absence of any blood on the second train -- while simultaneously pointing to a "large pool of blood" on the tracks for purposes of determining the accident location. On this record, the sum of the credible evidence indicates that plaintiff's injuries were caused by the first train, and accordingly, there is "no valid line of reasoning and permissible inferences" to sustain plaintiff's verdict (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]).

Even assuming that the second train caused plaintiff's injuries, plaintiff also failed to make a prima facie showing that the operator of that train acted negligently. In support of his claim of negligence, plaintiff argues that an incident report prepared by a NYCTA employee indicates that the operator saw the white sneakers on the track "as he was entering" the station, which -- according to plaintiff's expert -- would have allowed sufficient time for the operator to engage the emergency brake and stop the train before hitting plaintiff. However, plaintiff's expert implicitly rejected the proposition that the operator observed the sneakers immediately upon entering the station -- a 400 foot distance -- by testifying that the train's headlights would not have illuminated the sneakers until, at the

earliest, "151.5 feet from the front of the train."  Although the expert opined that 151.5 feet would have been a sufficient distance to stop the train, there is no record evidence to support the expert's assumption that the operator actually observed the sneakers from a distance of 151.5 feet.  Rather, according to the operator's trial testimony as well as his written report from the day of the accident, the operator did not see the sneakers until the train was almost fully stopped near the end of the station.  In the absence of any credible evidence that the operator had adequate time to stop the train, the jury's verdict relied on unsubstantiated speculation regarding the operator's negligence (Cohen, 45 NY2d at 499 [1978]).

Because plaintiff failed to make a prima facie showing of either negligence or causation, the jury's verdict is not supported by legally sufficient evidence and should be set aside.