OPINION OF THE COURT
Gabrielli, J.
The question presented on this appeal is whether the Appellate Division was correct in concluding as a matter of law that *496 the jury verdict awarding punitive damages to plaintiffs was based on insufficient evidence. For the reasons discussed below, we disagree with the conclusion reached by the Appellate Division, and thus the order appealed from must be reversed.
The plaintiffs in this action are a professional model and her daughter. In October, 1966, several pictures of the mother holding her then infant child were taken by one Ken Heyman, a professional photographer. On June 1, 1971, Heyman sold those pictures to defendant Hallmark Cards, Inc. (Hallmark), for publication in a collection of photographs entitled "Love Is Now” which was to be sold to the public by Hallmark for its profit. At that time, Heyman orally assured Hallmark that he had obtained written releases from plaintiffs. Additionally, Heyman represented in writing that use of the photographs by Hallmark would not infringe on the rights of others. Hallmark made no request for a copy of the written consents, and instead began printing the pictures and selling them in its publication.
In November, 1971, Heyman sent plaintiffs a letter advising them of the sale of their pictures, and asking them to sign written releases. He also sent them a copy of the Hallmark publication including their pictures. On December 8, 1971, plaintiffs’ counsel informed Hallmark in writing that plaintiffs had never consented to the use of their pictures by Hallmark, and requested Hallmark to stop using the pictures. Hallmark made no reply to that letter. Instead, on December 21, 1971, Hallmark wrote to Heyman, asking if he had written releases from plaintiffs. On advice of his counsel, Heyman did not respond. Hallmark made no other attempts to learn if indeed there existed written consents to the use of plaintiffs’ pictures. In late December, 1971, not having received any reply to their letter, plaintiffs commenced this action by service of a summons. On December 27, 1971, Hallmark ordered a new printing of the publication containing plaintiffs’ pictures; and on February 10, 1972, without any further inquiry, Hallmark ordered yet another printing. Finally, on or about February 23, plaintiffs served a complaint, seeking injunctive relief as well as both compensatory and punitive damages. During the following few months, Hallmark ordered additional printings of the publication containing plaintiffs’ pictures.[1]
*497 This action was commenced pursuant to section 51 of the Civil Rights Law, which provides for enforcement of New York’s statutory right of privacy.[2] In pertinent part, section 51 reads as follows: "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person’s name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages.”
Following a trial, the jury found in favor of plaintiffs, awarding them nominal compensatory damages as well as a total of $50,000 in punitive damages. Hallmark appealed solely from the award of punitive damages. It should be noted that Hallmark has not challenged the award of compensatory damages, nor does it contest the factual determination necessary to support such damages, namely, that it used plaintiffs’ pictures "for advertising purposes or for the purposes of trade without the written consent” of plaintiffs. Rather, Hallmark contends that the factual conclusion that it acted knowingly, without which no award of punitive damages is available under the statute, was not founded on evidence sufficient to support such a conclusion. After reviewing the evidence presented at trial, the Appellate Division concluded that "there was insufficient evidence submitted to the jury to warrant a finding of knowing use of a photograph without written consent” (58 AD2d 770, 771). Accordingly, that court deleted the *498 award of punitive damages as a matter of law. That decision cannot stand.
The Appellate Division decision did not turn on the factual question whether the jury determination was against the weight of the evidence. Rather, it was based on the legal issue whether there was sufficient evidence to support the factual finding that Hallmark acted knowingly. Although these two inquiries may appear somewhat related, they actually involve very different standards and may well lead to disparate results. Whether a particular factual determination is against the weight of the evidence is itself a factual question. In reviewing a judgment of Supreme Court, the Appellate Division has the power to determine whether a particular factual question was correctly resolved by the trier of facts. If the original fact determination was made by a jury, as in this case, and the Appellate Division concludes that the jury has made erroneous factual findings, the court is required to order a new trial, since it does not have the power to make new findings of fact in a jury case (see Middleton v Whitridge, 213 NY 499, 506-508). The result is, of course, different in cases not involving the right to a jury trial, since then the Appellate Division does have the power to make new findings of fact (see Bernardine v City of New York, 294 NY 361, 366-367; York Mtge. Corp. v Clotar Constr. Corp., 254 NY 128, 134; Bonnette v Molloy, 209 NY 167). In either situation, the determination that a factual finding was against the preponderance of the evidence is itself a factual determination based on the reviewing court’s conclusion that the original trier of fact has incorrectly assessed the evidence (see Middleton v Whitridge, supra, pp 505-508, 514).
 In this case, however, the Appellate Division has not merely determined that the jury incorrectly decided the factual question whether Hallmark acted knowingly. In fact, the Appellate Division has not reviewed the factual conclusions reached by the jury. Rather, the Appellate Division has held that plaintiffs failed to present sufficient evidence to support the conclusion that Hallmark acted knowingly. In a jury case, the result of such an inquiry is of considerably greater significance than is a determination that a factual conclusion is against the weight of the evidence, for in the former case the result is a final judgment, while in the latter the result must be merely a- new trial (see Middleton v Whitridge, supra, pp *499 507-508; see, also, Siegel, New York Practice, §§ 405-406). Thus, the question whether a verdict is against the weight of the evidence involves what is in large part a discretionary balancing of many factors (see Mann v Hunt, 283 App Div 140). For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence, however, requires a harsher and more basic assessment of the jury verdict. It is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial. The criteria to be applied in making this assessment are essentially those required of a Trial Judge asked to direct a verdict. It is a basic principle of our law that "it cannot be correctly said in any case where the right of trial by jury exists and the evidence presents an actual issue of fact, that the court may properly direct a verdict” (McDonald v Metropolitan St. Ry., 167 NY 66, 69-70; accord Loewinthan v Le Vine, 299 NY 372; Wessel v Krop, 30 AD2d 764). Similarly, in any case in which it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon, and thus a valid question of fact does exist, the court may not conclude that the verdict is as a matter of law not supported by the evidence (see Middleton v Whitridge, supra, pp 507-508).
Applying these principles to the present case, we conclude that the Appellate Division erred in finding the evidence insufficient as a matter of law to support the factual conclusion that Hallmark acted knowingly. While there is, of course, no evidence that Hallmark knew prior to December, 1971 that it did not have written consent to use plaintiffs’ pictures, the same cannot be said of the period subsequent to December 8, 1971, the date on which plaintiffs first notified Hallmark that they had not given their consent to the commercial use of their pictures. Even assuming, arguendo, that this express notification itself did not suffice to inform Hallmark that the plaintiffs had not consented to the use of their pictures, it was not irrational for the jury to conclude on the basis of this plus the evidence that Hallmark continued to print the pictures even after Heyman had failed to reply to its query, that by the time the complaint in this action was served in February, 1972, Hallmark was acting either with actual knowledge, or at the very least with a reckless disregard for the truth of *500 plaintiffs’ assertions (cf. Time, Inc. v Hill, 385 US 374).[3] Since there did exist a question of fact which was properly submitted to the jury, it was error for the Appellate Division to conclude that there was insufficient evidence to sustain the factual determination of that jury.
This is not to say, however, that the factual determination at issue was correctly made. As was noted above, the Appellate Division has authority to review findings of fact made by the jury, and to decide whether such determinations are in* accord with the weight of the evidence. Since the Appellate Division has not yet reviewed the facts in this case, we must remit to that court for exercise of its power to review the facts (CPLR 5613).[4] In light of the procedural posture of the case and our limited jurisdiction to review questions of fact (NY Const, art VI, § 3), we express no opinion as to whether the determination that Hallmark acted knowingly is in accord with the weight of the evidence. The question of imputation of knowledge is a question of fact which must be resolved in light of all the circumstances of the case. We would note, however, that in many instances the imputation of knowledge, and its concomitant responsibility, may not be avoided by the simple expedient of closing one’s eyes, covering one’s ears, and holding one’s breath.
Accordingly, the order appealed from should be reversed, with costs, and the case remitted to the Appellate Division for further proceedings in accord with this opinion.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.

. Hallmark contends that the trial court should have excluded all evidence of Hallmark’s activities subsequent to the commencement of this action, apparently on the theory that such actions would serve as separate breaches of plaintiffs’ right to *497 privacy, which are not pleaded in plaintiffs’ complaint. Without expressing any view as to whether subsequent publications would serve as the basis for separate actions (cf. Gregoire v Putnam’s Sons, 298 NY 119), it suffices to say that in the present case proof of continuing violations after commencement of this suit was certainly relevant to the question of punitive damages.

. In New York, there exists no so-called common-law right to privacy (see Wojtowicz v Delacorte Press, 43 NY2d 858). Thus, plaintiffs’ claim was founded on a violation of section 50 of the Civil Rights Law which provides as follows: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.”

. We would note that Hallmark does not now contend, nor has it ever argued that the term "knowingly” as used in section 51 of the Civil Rights Law does not encompass the concept of imputed knowledge arising from reckless disregard for the truth. Accordingly, we do not reach or consider that issue. Indeed, Hallmark could not raise it due to its failure to object at trial to the court’s charge to the jury (CPLR 4110-b).

. Should the Appellate Division conclude that the factual determination that Hallmark acted knowingly was in accord with the weight of the evidence, it may then exercise its discretionary jurisdiction to review the amount of exemplary damages awarded by the jury (see Nardelli v Stamberg, 44 NY2d 500, 503-504).