■ KIMBERLY BRUCATO, an Infant, by Her Father and Natural Guardian, JOHN BRUCATO, Respondent, v DALE PENNINGTON et al., Respondents, and NASSAU ANESTHESIA ASSOCIATES, P. C., et al., Appellants.—In an action to recover damages for medical malpractice, the defendants Nassau Anesthesia Associates, P. C., and Lila S. Gairns, and the defendant Richard Rieger separately appeal as limited by their briefs, from so much of a judgment of the Supreme Court, Nassau County (Widlitz, J.), entered May 22, 1985, as, upon a jury verdict and a stipulation consenting to the reduction of the verdict as to damages, is in favor of the plaintiff and against the defendants Gairns and Rieger, is in favor of the plaintiff in the principal sum of $1,400,000.

Ordered that the judgment is affirmed insofar as appealed from, with one bill of costs to the plaintiff payable by the appellants appearing separately and filing separate briefs.

Contrary to the contentions of the defendant Gairns, the record reveals that the plaintiff adduced evidence from which the jury could rationally conclude that the mismanagement of an epidural anesthetic administered by Gairns produced a massive abruption of the placenta, depriving the plaintiff of oxygen in utero and resulting in hypoxia and permanent brain damage. We note, moreover, that the plaintiff's expert testified that the neurological sequelae presently exhibited by the plaintiff reveal the typical picture of "hypoxic, ischemic brain injury of the newborn". In light of the foregoing, it

cannot be said that there "[are] simply no valid line[s] of reasoning and permissible inferences" supporting the jury's determination that the plaintiff suffered a hypoxic episode in utero (see, Cohen v Hallmark Cards, 45 NY2d 493, 499; Nicastro v Park, 113 AD2d 129, 132; see also, Datiz v Shoob, 125 AD2d 628).

Further, we conclude that the plaintiff has carried her burden of establishing that the defendant Rieger's alleged failure to properly treat her congenital hypothyroidism more probably than not resulted in certain neurological deficits which might otherwise have been reversed. Significantly, with respect to causation, always a difficult issue in medicine (see, e.g., Mertsaris v 73rd Corp., 105 AD2d 67, 82), this court has stated that "it bears emphasizing that to establish a prima facie case a plaintiff need not eliminate entirely all possibility that a defendant's conduct was not a cause. It is enough that he offer sufficient evidence from which reasonable men might conclude that it is more probable than not that the injury was caused by the defendant" (Mertsaris v 73rd Corp., supra, at 83; see, Vialva v City of New York, 118 AD2d 701, 703). At trial, the plaintiff adduced evidence, through expert testimony, that Dr. Rieger's failure to institute hormone replacement treatment immediately upon the formation of his clinical impression that the plaintiff suffered from hypothyroidism, represented a departure from accepted medical practice. The plaintiff's expert further testified that, in the case at bar, the failure to commence treatment immediately resulted in certain cognitive impairments discernible in the plaintiff's diminished abilities in the areas of reading and calculation. Although Dr. Rieger's expert testified, inter alia, that there had been no departure with respect to the management of the plaintiff's thyroid condition, we conclude that the issue of Dr. Rieger's negligence and the question of proximate cause in respect thereto, were properly submitted to the jury, whose determination we decline to disturb.

We have reviewed the parties' remaining contentions and find them to be without merit. Mangano, J. P., Kunzeman, Kooper and Spatt, JJ., concur.