■ SHIRLEY HARWOOD, Appellant, v JEROME HINDS et al., Respondents. [744 NYS2d 596] —Appeal from a judgment of Supreme Court, Onondaga County (McCarthy, J.), entered April 26, 2001, upon a jury verdict of no cause of action.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously reversed on the law without costs, the complaint is reinstated, the motion for a directed verdict is granted and a new trial is granted on damages only.

Memorandum: Plaintiff commenced this action seeking damages for injuries that she sustained on October 1, 1998 when her vehicle was rear ended by a vehicle owned by defendants and operated by defendant Nancy Hinds. Supreme Court granted plaintiff's motion seeking summary judgment on the issues whether defendants were negligent and whether their negligence was a proximate cause of the accident, and the case proceeded to trial on the issue whether plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d). Plaintiff appeals from a judgment entered upon a jury verdict of no cause of action. We agree with plaintiff that the court erred in denying her motion for a directed verdict on the issue whether she sustained a serious injury. We conclude that the evidence establishes as a matter of law that plaintiff sustained

a significant limitation of use of a body function or system within the meaning of Insurance Law § 5102 (d) (*see generally* CPLR 4401).

Plaintiff presented evidence that she sustained a cervical strain as a result of the accident and that prior to February 1999 she was examined by three physicians, each of whom observed muscle spasms in her neck and a limited range of motion of her neck. In February 1999 plaintiff complained of right shoulder pain and was diagnosed with capsulitis, which is also known as frozen shoulder. Shortly thereafter plaintiff relocated to Nevada, where she continued to undergo physical therapy but had no relief from her symptoms. Plaintiff was referred to a vascular surgeon who testified that plaintiff suffered from thoracic outlet syndrome as a result of the accident. The surgeon further testified that plaintiff was born with a cervical rib, i.e., a bony prominence at the base of the neck, which made her more susceptible to developing that syndrome. The surgeon testified that symptoms can develop after a period of months because muscle spasms cause scarring of the tissues around nerve bundles, ultimately resulting in symptoms of fatigue in the arms, paresthesia, and coldness in the hands. Plaintiff underwent surgery in September 1999 to relieve those symptoms. The surgeon and plaintiff both testified that plaintiff had been unable to return to her job as a secretary in Nevada following the surgery, due to the debilitating pain. Plaintiff returned to the Syracuse area in February 2000.

Plaintiff's treating physician testified that, upon examining plaintiff in March 2000, he determined that she had sustained a 25% loss of lateral range of motion of her neck. Upon examining plaintiff in May 2000, he determined that she had only a 5 degree extension of the neck, while the normal extension is 30 degrees.

Plaintiff's medical expert testified that he examined plaintiff in February 2001, approximately one month prior to the trial, and determined that she had atrophy of the left trapezius muscle and that the muscles on the right side of her neck were in spasm. Plaintiff had weakness in her right arm and could raise it only to 90 degrees, or shoulder level. The expert determined that plaintiff had a 50% restriction of the lateral rotation of her neck both to the left and right and that she had restriction of the forward flexion of her cervical spine and numbness at the base of her neck. The expert testified that the limitations with respect to plaintiff's neck would affect everyday activities such as using a computer, watching sports and backing up a car. With respect to the limitations of plaintiff's

arm, the expert testified that plaintiff would be unable to place an item on an overhead shelf and that her arm would become weak from activities such as using a computer.

Plaintiff testified that she has been in constant pain since the accident and that, although she engages in activities such as clerical work at her job, housework, and caring for her child, she does so with pain. Plaintiff, who is right-handed, testified that she has altered her method of performing certain tasks, e.g., she uses her left hand when drying her hair. By the time of trial, plaintiff was continuing to receive treatment from her physician primarily related to pain management, which includes the use of a morphine patch.

Defendants presented the testimony of a physician who examined plaintiff in January 1999. The physician testified that plaintiff had both limited range of motion of her neck and muscle spasms in her neck, but she did not have limited range of motion of her right shoulder and did not suffer from thoracic outlet syndrome. Contrary to defendants' contention, that testimony did not raise an issue of fact. Indeed, that testimony is consistent with the evidence that the pain and restrictions in plaintiff's right shoulder did not begin until February 1999 and that plaintiff developed thoracic outlet syndrome as a result of continued spasms over a period of months. Defendants also presented a surveillance videotape of plaintiff recorded approximately one week prior to the trial. The videotape of plaintiff's movements does not raise an issue of fact with respect to whether plaintiff sustained a significant limitation of her ability to move her neck and right shoulder. In fact, the videotape supported the testimony of plaintiff that the lateral range of motion of her neck had improved, that she had trouble lifting her head, that she could not raise her arms above her head, and that she used her right arm with difficulty.

Upon our review of the evidence presented at trial, we conclude that plaintiff supported her subjective complaints of pain with medical evidence that was " 'objectively measured or quantified' " (*Lynch v Williams,* 265 AD2d 870, 871) and that the evidence establishes that plaintiff sustained a significant, not a mild or minor, limitation of her neck and right shoulder (*cf. Gaddy v Eyler,* 79 NY2d 955, 957). We further conclude that defendants failed to raise an issue of fact whether plaintiff sustained a significant limitation of use of a body function or system. The court therefore erred in denying plaintiff's motion for a directed verdict, because "there was 'no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the

basis of the evidence presented at trial'" (*Levin v Carbone,* 277 AD2d 951, 951, quoting *Cohen v Hallmark Cards,* 45 NY2d 493, 499). Thus, we reverse the judgment, reinstate the complaint, grant plaintiff's motion for a directed verdict on the issue whether plaintiff sustained a serious injury as a result of the motor vehicle accident and grant a new trial on the issue of damages only. Present—Pigott, Jr., P.J., Hayes, Hurlbutt, Scudder and Burns, JJ.