[830 NE2d 298, 797 NYS2d 400]

HEARY BROS. LIGHTNING PROTECTION CO., INC., et al., Appellants, v INTERTEK TESTING SERVICES, N.A., INC., Formerly Known as ETL TESTING LABORATORIES, INC., and Others, Respondent.

Argued March 29, 2005; decided May 5, 2005

## POINTS OF COUNSEL

*Schroder, Joseph & Associates, LLP,* Buffalo (*Linda H. Joseph* of counsel), for appellants. I. The Appellate Division committed an error of law when it concluded that the terms of the listing agreement required a published standard. (*Greenfield v Philles Records,* 98 NY2d 562; *Thomas v Scutt,* 127 NY 133.) II. The Appellate Division committed an error of law when it concluded that the award of damages after April 2000 was against the weight of the evidence. (*Ohdan v City of New York,* 268 AD2d 86; *Lolik v Big V Supermarkets,* 86 NY2d 744.)

*Thaler & Thaler,* Ithaca (*Richard T. John* of counsel), for respondent. I. The Appellate Division did not err in finding that any award of damages after April 2000 was against the weight of the evidence. (*Morales v County of Nassau,* 94 NY2d 218; *McMurren v Carter,* 38 NY2d 742; *Sage v Fairchild-Swearingen Corp.,* 70 NY2d 579; *Matter of Von Bulow,* 63 NY2d 221; *Cohen v Hallmark Cards,* 45 NY2d 493; *Ashland Mgt. v Janien,* 82 NY2d 395; *Kenford Co. v County of Erie,* 73 NY2d 312; *Kenford*

*Co. v County of Erie,* 67 NY2d 257; *Lolik v Big V Supermarkets,* 86 NY2d 744; *Matter of De Zimm v Connelie,* 64 NY2d 860.) II. The Appellate Division did not err as a matter of law in limiting damages to April 2000. (*Freund v Washington Sq. Press,* 34 NY2d 379; *Swain v Schieffelin,* 134 NY 471; *Bogdan & Faist v CAI Wireless Sys.,* 295 AD2d 849; *Kenford Co. v County of Erie,* 67 NY2d 257; *Kenford Co. v County of Erie,* 73 NY2d 312.) III. Plaintiff is not entitled to reinstatement of the jury award of damages. (*O'Connor v Papertsian,* 309 NY 465; *Morales v County of Nassau,* 94 NY2d 218.)

### OPINION OF THE COURT

R.S. SMITH, J.

In this breach of contract case, the issue is the extent to which plaintiffs can recover for lost profits. We hold, as did the Appellate Division, that plaintiffs have no viable claim for lost profits attributable to any time later than April 2000.

## Facts and Procedural History

Plaintiffs are two affiliated companies that manufacture and distribute lightning protection systems. Defendant is a private testing laboratory. The parties entered into an agreement in 1994 pursuant to which defendant would test and certify plaintiffs' "Early Streamer Emission" (ESE) products.

ESE was a controversial technology that, according to plaintiffs, represented a significant improvement on traditional lightning rods. In 1994, no officially adopted industry standard for ESE products existed; a draft of such a standard, known as "Draft NFPA 781," did exist, and plaintiffs were engaged in what proved to be a long and fruitless effort to obtain final approval of the draft by the National Fire Protection Association (NFPA). After much analysis and controversy, the NFPA finally and definitively rejected the draft on April 28, 2000.

Meanwhile defendant agreed to, and for some years did, test plaintiffs' products for compliance with the requirements contained in Draft NFPA 781. Defendant certified the products when they passed the tests—meaning, among other things, that plaintiffs were allowed to affix defendant's "certification mark" to the products. After a rocky relationship whose details need not be recounted, defendant informed plaintiffs in 1998 that it would no longer permit plaintiffs to use its mark. As a result, plaintiffs sued defendant on various theories. Only their breach of contract claims survive.

The case was tried in 2001. At trial, plaintiffs presented, through an expert, evidence of the profits they claimed to have lost, based on historical data, through November 2000, and of profits they expected to lose, based on projections, through 2014. The jury found that defendant had breached the contract and awarded plaintiffs $2,208,360 in lost profits damages, of which only $197,449 was attributable to the period ending in November 2000.

On defendant's posttrial motion, Supreme Court upheld the liability verdict but ordered a new trial on damages unless plaintiffs accepted the reduced amount of $410,000. The Appellate Division modified, ordering a new trial on damages without offering the option of a smaller judgment, and providing that no damages could be awarded for the period after April 2000. Plaintiffs appeal to this Court as of right pursuant to CPLR 5601 (c), on a stipulation for judgment absolute. We affirm.

## Discussion

### A. Reviewability

Defendant argues that we have no power to review the Appellate Division's decision because it resolved a question of fact, not a question of law (see CPLR 5501 [b]). We disagree, and hold that the decision is reviewable.

■ The problem arises because the Appellate Division opinion says that Supreme Court's order is "modified on the law," but also says that "the jury's award of damages is against the weight of evidence" (9 AD3d 870, 870, 872 [2004]). A "weight of the evidence" determination is a factual one that we have no power to review (see Cohen v Hallmark Cards, 45 NY2d 493, 498-500 [1978]).

The result reached shows that in reality the Appellate Division ruled on the sufficiency, not the weight, of the evidence. The Appellate Division held that the new trial it ordered "shall be on damages from September 1998 to April 2000," thus prohibiting any award of damages for a later time (9 AD3d at 871). In effect, the Appellate Division directed a verdict against plaintiffs as to post-April 2000 damages—a ruling of law that this Court is empowered to review (see Cohen, 45 NY2d at 497-498, 500; Karger, Powers of the New York Court of Appeals § 77 [c], at 475-476 [3d ed]).

B. The Merits

We agree with the Appellate Division that no legally sufficient evidence supports an award of damages attributable to any time after April 2000.

April 28, 2000 is a key date, because that was when the NFPA rejected Draft NFPA 781 for the last time, putting an end to plaintiffs' long efforts to get the draft adopted as the industry standard for ESE products. Defendant argues in substance that, even if it had complied with what the jury found to be its contractual duties, it would not and could not have tested and certified plaintiffs' products after April 2000 because there was not even a tentative or prospective industry standard to test them against. It may have made sense, defendant's argument runs, to test and certify products for compliance with the draft standard while there was still a possibility that the industry would adopt it, but testing products against a definitively rejected standard made no sense. No credible testing laboratory could certify products as complying with a rejected standard, and plaintiffs were not entitled to, and could not benefit from, such a meaningless certification. Thus, defendant argues, its breach of contract did not cause plaintiffs to lose any profits after April 2000. We find this argument to be sound.

Plaintiffs' response is that, even after April 2000, defendant could have tested plaintiffs' products against the requirements contained in the now-defunct draft standard, and could have certified that the products passed the tests. The parties' contract, plaintiffs point out, did not require tests to be against an industry standard. Indeed, the contract, which is on a standard form used by defendant with all its clients, refers to "the published Standard or Standards, *if any*, applicable from time to time" (emphasis added).

No doubt it would have been physically possible, after April 2000, to run tests comparing plaintiffs' products to the requirements contained in the rejected Draft NFPA 781. And we assume that there are times when it makes sense for defendant to test a client's products against something other than an industry-wide standard; defendant suggests that this may occur, for example, where a customer of the client (perhaps a municipality or other public body) has specifications of its own that the client must meet. But plaintiffs do not explain why it would have made any sense in this case to test their products against requirements contained in a draft standard that had been

abandoned. Nothing in the record suggests that a certification showing that such tests were passed would have had commercial value to plaintiffs, or that the absence of such a certification could have caused plaintiffs to lose any profits. There was, in short, no evidence from which a jury could conclude that defendant's breach of contract caused plaintiffs any damages after April 2000.

Accordingly, the order of the Appellate Division should be affirmed with costs, and judgment absolute ordered against plaintiffs on the stipulation.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order affirmed, etc.