■ JANICE FOLEY, Appellant, v CITY OF NEW YORK, Respondent. [57 NYS3d 464]—

Order, Supreme Court, New York County (Frank P. Nervo, J.), entered October 8, 2015, which granted defendant's motion pursuant to CPLR 4404 to set aside the jury's verdict on liability and dismissed the complaint, reversed, on the law, without costs, the motion denied, and the jury verdict reinstated.

"Although '[t]he awareness of one defect in the area is insufficient to constitute notice of a different particular defect which caused the accident,' where there are factual issues as to the precise location of the defect that caused a plaintiff's fall and whether the defect is designated on the map, the question should be resolved by the jury" (*Reyes v City of New York*, 63 AD3d 615, 615 [1st Dept 2009], *lv denied* 13 NY3d 710 [2009], quoting *Roldan v City of New York*, 36 AD3d 484, 484 [1st Dept 2007]; *see also Quinn v City of New York*, 305 AD2d 570, 571 [2d Dept 2003]). The trial court improperly set aside the verdict against the City for lack of legally sufficient evidence that the

City had prior written notice of the alleged defect in the curb at the corner where plaintiff indicated she fell (Administrative Code of City of NY § 7-201 [c]). A jury verdict may not be set aside for legal insufficiency unless there is "no valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Here, it cannot be said that it was "utterly irrational for [the] jury to reach the result it has determined upon" (*id.*).

At trial, plaintiff testified that she tripped and fell, due to a defect at the corner of Madison Street and Rutgers Street. Plaintiff testified that she stepped off the curb with her left foot into the crosswalk on to Madison Street and that the tip of her right foot got caught on something on the ground, which caused her to fall and fracture her ankle. Plaintiff further testified that the curb where she tripped and fell was "separated from the sidewalk and raised." Plaintiff also entered into evidence photographs of the street corner where she fell that depicted a broken, cracked and defective curb in front of 197 Madison Street. Another photograph entered into evidence showed that the address of "197 Madison St." was clearly reflected on the H and M Deli storefront awning, located at the corner of the intersection where plaintiff fell. Counsel for the City further highlighted this point during re-cross-examination of plaintiff regarding the precise location of her fall, when counsel inquired, "In front of that H and M Deli? . . . The deli that is addressed 197 Madison, right?" To which plaintiff replied, "Yes." Additionally, the Big Apple Map, which the City stipulated to receiving, denoted an "X" in front of 197-199 Madison Street, and, according to the Big Apple Map Legend, an "X" indicates a "broken, misaligned or uneven curb."

Our dissenting colleague contends that it is "undisputed that there are no defect marks shown at the crosswalk or the curb near the crosswalk where plaintiff fell." This statement, however, is not wholly correct and attempts to gloss over the issue presented in this case, an issue that, appropriately, went to the jury for consideration. First, although plaintiff did indeed fall into, and ultimately land in, the crosswalk, she never testified that a defect in the crosswalk caused her to fall. Thus, our dissenting colleague's focus on a lack of a "defect mark in the area of the crosswalk including the nearby curb area between Madison and Rutgers Streets where plaintiff fell" is misplaced. Moreover, while it is true that the Big Apple Map did not have an "X" at the precise corner where plaintiff fell, the map did

depict an "X" in front of the address of 197 Madison Street, which encompasses multiple storefronts within one building, stretching from the building on the corner towards the middle of the block. Second, our dissenting colleague puts much emphasis on the key chart of the Big Apple Map in an attempt to support his argument that the map does not indicate any defect where plaintiff fell because an "extended defect" symbol does not appear "on Madison Street or at the corner where plaintiff fell." However, the key chart to the Big Apple Map, which we have reviewed and is informative, does not provide any information as to "the length or distance of the defect," nor can such information be gleaned from the map itself. Indeed, the Big Apple Map employee testified that the map does not indicate how far a defect is from a curb or a tree, nor does the map indicate the size, width or length of the defect. Lastly, no one testified that the defect designated on the map was 35 feet away from the defect that caused plaintiff's accident. Rather, the City made that argument in its motion to set aside the verdict, and, as already noted, the Big Apple Map does not provide any information regarding how far the defect is from the curb or any information as to the size, width or length of the defect. Thus, whether the "precise location of the defect that caused . . . plaintiff's fall . . . is designated on the map" was, under the circumstances at bar, an issue of fact for the jury's resolution (*Reyes*, 63 AD3d at 615; *see also Patane v City of New York*, 284 AD2d 513, 514-515 [2d Dept 2001]), and the evidence provided a sufficient basis for the jury to conclude that the City had prior written notice of the defect.* Concur— Acosta, P.J., Kapnick and Gesmer, JJ.

---

* Although the *Reyes* case involved the symbol on the Big Apple Map "show[ing] an extended portion of broken or misaligned curb," the case does not, contrary to our dissenting colleague's contention, stand for the proposition that only cases involving an "extended defect" present an issue for the jury as to the "length of the defect and whether it caused plaintiff's fall" (*Reyes* at 616). Moreover, *Almadotter v City of New York* (15 AD3d 426 [2d Dept 2005]), cited by the *Reyes* Court and relied upon by our dissenting colleague does not turn only on the presence of "extended defects." Rather there, the Court was faced with the question of whether the issue concerning the difference between the plaintiff's description of the defect on the sidewalk and the language used in the key chart to describe the defect depicted on the Big Apple Map presented a question of fact to be resolved by the jury. The Court found that it did. The fact that the condition at issue involved an "extended section of obstructions" of the sidewalk was of no moment. Further support of this is demonstrated by the *Almadotter* Court's finding that *Camacho v City of New York* (218 AD2d 725 [2d Dept 1995]), relied upon by the City, was clearly distinguishable because "[t]here, the one-foot-deep hole measuring three by four feet in width clearly was not the raised sidewalk noticed on the Big Apple Pothole map" (*Almadotter v City of New York*, 15

Tom and Kahn, JJ., dissent in a memorandum by Tom, J., as follows: I would find that the trial court properly set aside the verdict against the City for lack of legally sufficient evidence that the City had prior written notice of the alleged defect in the crosswalk at the corner where plaintiff indicated she fell (Administrative Code of City of NY § 7-201 [c]). Plaintiff's evidence was insufficient to show that the markings on the Big Apple Map constituted notice of defects at the location of her accident, since she fell at a completely different location than the sidewalk defect marking on the Big Apple Map (*see Vega v 103 Thayer St., LLC*, 23 NY3d 1027 [2014]; *Roldan v City of New York*, 36 AD3d 484 [1st Dept 2007]). Accordingly, I respectfully dissent.

At trial, plaintiff specifically testified that she fell at "the corner in the crosswalk right after the light pole" by the intersection of Madison Street at Rutgers Street. Referring to photographs in evidence that depicted a grate near the crosswalk and light pole, plaintiff remarked that she was sure that this corner was the location, stating, "I know where I fell. I didn't want to hit that grate with my face. That's how I remember exactly where I fell." Plaintiff marked a photograph showing the area of the crosswalk where she fell. While plaintiff recognized the "Chen Wong restaurant," also numbered 197 Madison Street, and Madison Bagels and Grocery, she stated that the accident did not take place in front of those locations. Plaintiff's unequivocal testimony was that she fell in the crosswalk at an intersection and not on the sidewalk where the defects are indicated on the Big Apple Map. It is undisputed that there are no defect marks shown at the crosswalk or the curb near the crosswalk where plaintiff fell, and there is no basis for the majority's suggestion that stating there are no defect marks at the corner is "not wholly correct."

In contrast with plaintiff's testimony, the Big Apple Map received in evidence shows a straight line and an "X" (indicating a section of broken, misaligned or uneven curb) on the sidewalk approximately at the midpoint of the building addressed 197 Madison Street and, based on photographs in evidence, at least two large storefronts' length away from the corner of Madison and Rutgers Streets—the area where

AD3d at 427-428). "Therefore, since the prior notice law is in derogation of the common law and must be strictly construed against the City, a notice is sufficient if it brought the particular condition at issue to the attention of the authorities" (*id.* at 427). As previously discussed, "[W]here there are factual issues as to the precise location of the defect that caused a plaintiff's fall . . . the question should be resolved by the jury" (*Reyes v City of New York*, 63 AD3d at 615), which is what occurred here.

plaintiff testified she fell. The key chart to the Big Apple Map symbols, also received into evidence, shows extended and nonextended pavement defects. The extended defects are shown by two same symbols of a particular type of defect connected by a straight line reflecting the extended length or distance of the defect. However, none of these "extended defect" symbols appear on Madison Street or at the corner where plaintiff fell. The nonextended or localized defect is shown by a singular symbol reflecting a particular type of pavement defect. Here, the symbols placed on Madison Street are depicted as nonextended, localized defects that could not fairly be read as encompassing the entire block or reaching to the corner where plaintiff fell, as the majority seeks to do.

There is nothing in the record that shows a defect mark in the area of the crosswalk including the nearby curb area between Madison and Rutgers Streets where plaintiff fell. Nor did the location of the defect markings in front of 197 Madison Avenue present an issue for the jury's consideration, as the jury could not reasonably find that a single defect, depicted by a singular mark, at least two large storefronts' length away from the corner where plaintiff fell to be a proximate cause of her fall. The defect mark on Madison Street is not close to the corner where plaintiff fell, as the majority intimates, and is a significant distance away from the corner. Contrary to the majority's position, no fair interpretation of the evidence presented in this case allows for the conclusion that the localized defects could somehow extend past the length of two large storefronts and then wind their way to the crosswalk where plaintiff fell, and thus the jury's verdict cannot stand (*Goldstein v Snyder*, 3 AD3d 332, 333 [1st Dept 2004] [considering whether the "verdict (is) contrary to any conclusion that might be reached on the basis of a fair interpretation of the evidence"]; *Cohen v Hallmark Cards*, 45 NY2d 493, 498-499 [1978]). The City points out in its motion to set aside the verdict that using the scale on the map, the defect markings on the Big Apple Map indicate the defects in the sidewalk were about 35 feet from the corner where plaintiff claims she fell.

The majority is attempting to conflate a localized defect and an extended defect, which is an unreasonable conclusion. In this regard, the majority states that the "key chart to the Big Apple Map . . . does not provide any information as to 'the length or distance of the defect.' " However, that point might be relevant if we were faced with an extended defect and the jury could have assessed the length of the defect to determine whether it reached the corner. Significantly, this case involves

a localized defect that under no circumstances could fairly be seen to extend more than two large storefronts' length to the area where plaintiff fell. The majority avoids the meaning of the key chart and appears to treat all defects as extended defects. But, such a view does not comport with the key chart's careful distinctions between localized and extended defects.

Once again, plaintiff testified that she fell in the crosswalk at the corner of Madison Street and Rutgers Street. She never testified that she fell on the sidewalk or anywhere near where the Big Apple Map defect symbols are located. Consequently, there were no factual issues as to the precise location where plaintiff fell at the crosswalk or that the defect designated on the map was on the sidewalk and over 35 feet away from the corner where plaintiff claimed she fell (*cf. Reyes v City of New York*, 63 AD3d 615 [1st Dept 2009], *lv denied* 13 NY3d 710 [2009]).

Notably, unlike this case, in *Reyes*, relied on by the majority, the symbol on the Big Apple Map "showed an extended portion of broken or misaligned curb," as reflected by two "Xs" connected by a straight line, fairly presenting an issue for the jury as to the length of the defect and whether it caused the plaintiff's fall (*id.* at 616). Such an extended defect is not present here. Contrary to the majority's reading of the case, the basis for our holding in *Reyes* was that the defect there was an extended defect, which, in conjunction with the other evidence, permitted the jury to fairly conclude that it was the same defect that caused the plaintiff to fall. Notably, the cases upon which *Reyes* relied also involved extended defects (*see Almadotter v City of New York*, 15 AD3d 426, 427 [2d Dept 2005] ["(e)xtended section of obstructions protruding from (the) sidewalk" (internal quotation marks omitted)]) or multiple defects at the location of the accident all within close proximity to each other (*see Johnson v City of New York*, 280 AD2d 271 [1st Dept 2001]).*
Accordingly, *Reyes* does not permit a jury to utilize a localized

---

* Contrary to the majority's view, the fact that the defect at issue in *Almadotter* was an extended defect was certainly relevant to the Court's finding that a question of fact was presented for a jury to resolve. Specifically, the evidence submitted by the plaintiff there, including photographic evidence of a "stretch of concrete sidewalk with contiguous slabs that are of different heights" (15 AD3d at 427), combined with the presence of an extended section of obstructions on the Big Apple Map, raised an issue as to the precise location of the defect that allegedly caused the plaintiff's fall, and whether the alleged defect was designated on the map, thus presenting an issue to be resolved by the jury. In contrast, the case before us involves a localized defect on the map and testimony from plaintiff clearly establishing that such defect was not in the vicinity of her fall. Accordingly, there is a crucial distinction between this case and those involving extended defects, and it

defect at a different location on the Big Apple Map to find that the City had notice of a defect a fair distance away that allegedly caused the plaintiff to fall.

Further, while the address of 197 Madison Street encompasses multiple storefronts within one building, the "X" shown on the Big Apple Map is located directly in the front entrance of 197 Madison Street. Once again, the mark on the Big Apple Map reflects defects only in the area of the marking itself. This does not permit the unreasonable inference, which the majority makes, that the "X" mark somehow encompasses and extends to the entire address, or over 35 feet away to the corner of Madison Street and Rutgers Street. This would be an unreasonable interpretation of the Big Apple Map. Accordingly, there was no basis for the jury to find that the City had prior written notice of any defect at the corner of Madison Street and Rutgers Street where plaintiff fell, and thus no legal basis to support a verdict in favor of plaintiff.

would be improper to conclude that this case raise an issue of fact for the jury to resolve.