East Hampton Union Free Sch. Dist. v Sandpebble Bldrs., Inc. (2019 NY Slip Op 00420)





East Hampton Union Free Sch. Dist. v Sandpebble Bldrs., Inc.


2019 NY Slip Op 00420


Decided on January 23, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 23, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
SHERI S. ROMAN
SANDRA L. SGROI
HECTOR D. LASALLE, JJ.


2017-01509
 (Index No. 1113/07)

[*1]East Hampton Union Free School District, respondent,
v
Sandpebble Builders, Inc., appellant.


Esseks, Hefter, Angel, Di Talia & Pasca, LLP, Riverhead, NY (Stephen R. Angel, Anthony C. Pasca, and Amanda Star Frazer of counsel), for appellant.
Pinks, Lipshie, White & Nemeth, Hauppauge, NY (Steven G. Pinks and Jonathan W. Lipshie of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, for a judgment declaring that a contract dated April 2002 is void and unenforceable, the defendant appeals from a judgment of the Supreme Court, Suffolk County (Jerry Garguilo, J.), entered December 14, 2016. The judgment, insofar as appealed from, upon a jury verdict in favor of the defendant and against the plaintiff, awarded the defendant the principal sum of only $755,767.41.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
In April 2002, the plaintiff, East Hampton Union Free School District (hereinafter the district), entered into a contract with the defendant, Sandpebble Builders, Inc., pursuant to which the defendant was to provide construction management services to the district in connection with a project involving the renovation of certain schools within the district (hereinafter the April 2002 contract). The April 2002 contract provided that the cost of the project was then unknown, but it stated that the cost was assumed to be $18,000,000. The April 2002 contract further provided that after a referendum on the project, the assumed project cost would be changed to 80% of the referendum amount. Schedule A of the April 2002 contract specified that the defendant would be paid the sum of $270,000 for "Basic Services during the pre construction phase" of the project and the sum of $630,000 for "Basic Services during the construction phase," for a total sum of $900,000, or 5% of the assumed project cost of $18,000,000. The defendant performed certain preconstruction services under the April 2002 contract and was paid the sum of approximately $200,000. However, construction on the project was never commenced.
As previously set forth, in part, in our decision and order on a prior appeal in this action (see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 90 AD3d 815, 816), subsequent to the execution of the April 2002 contract, the parties attempted to negotiate what the district characterized as a new contract, and what the defendant maintained was a revised contract for construction management services. However, the negotiations ultimately failed (see id. at 816). The district later undertook a larger project costing approximately $79,000,000, which amount was approved by a referendum, and hired a new construction manager for that project. However, the defendant maintained that it continued to work on the project after the approval of that referendum.
The district commenced this action seeking, inter alia, a judgment declaring that the April 2002 contract was void and unenforceable because it was not approved by the district's Board of Education or, alternatively, that the April 2002 contract was properly terminated in accordance with its terms because the renovation project contemplated by the agreement was permanently abandoned (see id. at 817). In its verified answer, the defendant interposed a counterclaim to recover damages for breach of the April 2002 contract, including the sum of $3,141,432 for lost profits, alleging that the district prevented it from completing its performance under the April 2002 contract. In our decision and order on the prior appeal, this Court, inter alia, agreed with the Supreme Court's determination denying those branches of the defendant's motion which were for summary judgment, in effect, declaring that the April 2002 contract was not properly terminated in accordance with its terms and on its first counterclaim to recover damages for breach of the April 2002 contract (see id. at 818).
In November 2015, the district moved for summary judgment, in effect, declaring that the damages the defendant could recover on its first counterclaim were limited pursuant to paragraphs 9.6 and 9.7 of the April 2002 contract, so as to preclude the defendant from recovering any damages for lost profits. Paragraph 9.6 provided that "[i]n the event of termination not the fault of the Construction Manager, the Construction Manager shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 9.7." Paragraph 9.7 defined "Termination Expenses" as "those costs directly attributable to termination for which the Construction Manager is not otherwise compensated." In an order dated January 15, 2016, the Supreme Court denied the district's motion. The action proceeded to a jury trial. Following the trial, the jury determined, among other things, that the district had breached the April 2002 contract, and it awarded the defendant damages in the sum of $755,767.41 pursuant to paragraph 9.6 of the contract. The jury declined to award the defendant damages for lost profits. Thereafter, a judgment was entered in favor of the defendant and against the district in the principal sum of $755,767.41.
The defendant contends that the jury's verdict awarding it the principal sum of only $755,767.41 was not supported by legally sufficient evidence and was contrary to the weight of the evidence. The defendant argues, among other things, that it was entitled to lost profits as calculated under the April 2002 contract based on the referendum amount of approximately $79,000,000.
"For a reviewing court to determine that a jury verdict is not supported by legally sufficient evidence, it must conclude that there is simply no valid line of reasoning and permissible inferences' by which the jury could have rationally reached its verdict on the basis of the evidence presented at trial'" (Sokolik v Pateman, 114 AD3d 839, 840, quoting Cohen v Hallmark Cards, 45 NY2d 493, 499). Additionally, a jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746; Sokolik v Pateman, 114 AD3d at 840; Williams v City of New York, 71 AD3d 1135, 1137).
"A party may not recover damages for lost profits unless they were within the contemplation of the parties at the time the contract was entered into and are capable of measurement with reasonable certainty" (Ashland Mgt. v Janien, 82 NY2d 395, 403; see Superior Vending Servs., Inc. v Workmen's Circle Home & Infirmary Found. for the Aged, N.Y. State Branches, Inc., 148 AD3d 960, 961).
Here, based on the evidence presented at trial, there was a valid line of reasoning and permissible inferences by which the jury could have rationally reached its verdict awarding the defendant the sum of $755,767.41 in damages. Contrary to the defendant's contention, there was evidence from which the jury could have arrived at that amount based on the assumed project cost of $18,000,000. The jury also could have determined that lost profits based on the subsequent $79,000,000 project were not contemplated by the parties at the time of the execution of the April 2002 contract (cf. Ashland Mgt. v Janien, 82 NY2d at 404-405). Furthermore, the jury's verdict on the issue of damages was not contrary to the weight of the evidence, as the record demonstrates that the verdict on that issue was based on a fair interpretation of the evidence (see Hoth Assoc. v Capriola, 236 AD2d 368, 369). The jury was free to accept or reject some or all of the testimony [*2]at trial, and weigh any conflicting inferences (see Johnny's Plumbing & Heating v Garson Bros. Constr., LLC, 63 AD3d 689).
AUSTIN, J.P., ROMAN, SGROI and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court