# State of New York Court of Appeals

## MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 22  SSM 21
In the Matter of Sophie Peter
Kotsones, &c.

James Kotsones,
       Appellant,
     v.
Alexander Kreopolides, &c., et
al.,
       Respondents.

Submitted by Aaron I. Mullen, for appellant.
Submitted by Anthony N. Elia III, for respondents.

MEMORANDUM:

The order of the Appellate Division should be affirmed, with costs.

The Appellate Division applied the correct standards for determining whether a confidential relationship existed or whether undue influence was exercised.  To the extent the Appellate Division made new findings, we conclude that its findings more nearly comport with the weight of the evidence (*see Dryden Mut. Ins. Co. v Goessl*, 27 NY3d 1050, 1052 [2016]).

-1-

RIVERA, J. (dissenting):

"Where the Appellate Division reverses the findings of fact made by the trial court and makes new findings, our role is to determine which court's findings are in accord with the weight of the evidence" (*Oelsner v State of New York*, 66 NY2d 636, 637 [1985]). In

- 1 -

other words, it is our duty to determine which court's findings more nearly comport with the weight of the evidence (*Dryden Mut. Ins. Co. v Goessl*, 27 NY3d 1050, 1052 [2016]). While the Appellate Division retains the authority, in nonjury cases, to weigh the evidence and make new findings of fact (*see Cohen v Hallmark Cards*, 45 NY2d 493, 498 [1978]), the Appellate Division here too readily discounted the factual findings of Surrogate's Court. Because that court's findings of fact concerning the presence of a confidential relationship and undue influence "rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations" (*Papovitch v Papovitch*, 84 AD3d 1045, 1046 [2d Dept 2011] [internal quotations and citation omitted]).

Here, the Appellate Division's decision is predicated largely on testimony that decedent participated in the contested transactions and revisions to her will, which the Court decided negated any inference of undue influence. But the record contains contrary testimony that decedent's participation was merely the result of respondents' coercive influence—testimony which the Surrogate observed firsthand and consequently chose to credit over the testimony purportedly establishing decedent's insuperable, strong-willed character. The "assessment of credibility by the court, which had the opportunity to see and hear the witnesses and assess their demeanor, is entitled to great deference" (*Matter of Tenzer*, 144 AD3d 1044, 1046 [2d Dept 2016], citing *Papovitch*, 84 AD3d at 1046). Further, a strong-willed individual is not immune from undue influence, and evidence that decedent had the ability to make choices and exercised some control over her financial affairs is not dispositive as to whether her actions were taken free of improper influence

and manipulation (*see Rollwagen v Rollwagen*, 63 NY 504, 519 [1876] ["But if we assume that the will and codicil were formally executed, and that the mind of the testator accompanied the act, and that the contents of the instruments were known to (them) and assented to by (them), probate would still have to be refused on account of undue influence"]). As this Court explained over a century ago,

> "It is not sufficient to avoid a will that it is obtained by the legitimate influence which affection or gratitude gives a relative over the testator. A competent testator may bestow [their] property upon the objects of [their] affection, and [they] may, from gratitude, reward those who have rendered [them] services, but if one takes advantage of the affection or gratitude of another to obtain an unjust will in [their] favor, using [their] position to subdue and control the mind of the testator so as, substantially, to deprive [them] of [their] free agency, then the fact that affection or gratitude was the moving cause makes it no less a case of undue influence" (*id.* at 520).

Therefore, I would reverse the order of the Appellate Division and reinstate the order of the Surrogate's Court.

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, with costs, in a memorandum. Chief Judge DiFiore and Judges Garcia, Wilson, Singas and Cannataro concur. Judge Rivera dissents and votes to reverse and reinstate the order of Surrogate's Court, in an opinion.

Decided January 11, 2022