Coward v Consolidated Edison, Inc. (2023 NY Slip Op 02642)

Coward v Consolidated Edison, Inc.

2023 NY Slip Op 02642

Decided on May 17, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 17, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
FRANCESCA E. CONNOLLY
JOSEPH A. ZAYAS
LILLIAN WAN, JJ.

2019-13237
 (Index No. 13494/14)

[*1]Kenneth Coward, appellant, 
v
Consolidated Edison, Inc., et al., respondents. Bonita E. Zelman (Alexander J. Wulwick, New York, NY, of counsel), for appellant.

Heidell, Pittoni, Murphy & Bach, LLP, New York, NY (Daniel S. Ratner of counsel), for respondents.

DECISION & ORDER
In an action to recover damages for personal injuries, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Laurence L. Love, J.), dated August 30, 2019. The judgment, upon a jury verdict in favor of the defendants on the issue of liability, is in favor of the defendants and against the plaintiff dismissing the complaint.
ORDERED that the judgment is reversed, on the facts and in the exercise of discretion, with costs, the jury verdict is vacated, the complaint is reinstated, and the matter is remitted to the Supreme Court, Queens County, for a new trial on the issue of liability and, if necessary, a trial on damages.
In September 2014, the plaintiff commenced this action against the defendants, Consolidated Edison, Inc., and Consolidated Edison Company of New York, Inc. (hereinafter together Con Edison), to recover damages for personal injuries he alleged that he sustained in July 2014. The plaintiff alleged that, on the day at issue, he was riding his motorcycle on a road in Queens when a truck traveling in the opposite direction hit the high voltage electrical and communication cables strung above the road, causing them to rip away from the house to which they were connected and fall on top of him, causing him to sustain injuries. The plaintiff contended that Con Edison was responsible for the accident because, inter alia, it failed to properly maintain the high voltage cable for which it was responsible. According to the plaintiff, the Con Edison cable was hanging below the requisite legal height such that it became snagged on the truck, causing the accident.
"CPLR 1010 provides a safety valve for cases in which [a] third-party claim will unduly delay the determination of the main action or prejudice the substantial rights of any party" (Soto v CBS Corp., 157 AD3d 740, 741 [internal quotation marks omitted]). This is particularly true where defendants deliberately and intentionally delay commencing a third-party action (see id. at 741). Here, Con Edison, on the eve of the trial of this action, commenced a third-party action against Verizon New York, Inc. (hereinafter Verizon), alleging that Verizon was directly or partially responsible for the plaintiff's injuries because Verizon's communication cables were improperly tied to the Con Edison electrical cable at issue causing the cables to hang too low over the road such that they became snagged on the truck, causing the accident. The plaintiff moved, inter alia, to dismiss [*2]the third-party complaint. In an order dated January 25, 2019 (hereinafter the January 2019 order), the Supreme Court determined that Con Edison's excessive delay in commencing that third-party action against Verizon was "knowing and deliberate" (citing Range v Trustees of Columbia Univ. in the City of N.Y., 150 AD3d 515, 516), and that its explanation for the delay was not reasonable. The court determined that Con Edison had engaged in an intentional pattern of delay in the action and had failed to comply with its discovery obligations with respect to notifying the plaintiff about Verizon's potential culpability, to the plaintiff's prejudice, and thus granted that branch of the motion which was to dismiss the third-party complaint. Con Edison did not appeal the January 2019 order.
Thereafter, prior to jury selection, the plaintiff made a motion in limine to preclude Con Edison from arguing to the jury that Verizon was responsible in whole or in part for the plaintiff's injuries on the ground that the plaintiff would be prejudiced by any such reference. During oral argument on the motion, Con Edison's counsel conceded that it had no witness who could testify that any cable tied to Con Edison's cable was owned by Verizon. The Supreme Court concluded that Con Edison's counsel's contentions regarding evidence showing that a cable that was tied to Con Edison's cable was owned by Verizon were too speculative to allow a jury to hear, and that the prejudice to the plaintiff outweighed any probative value. The court thus granted the plaintiff's motion in limine and, inter alia, precluded Con Edison from presenting to the jury the theory that Verizon was responsible for the plaintiff's injuries, or from introducing any records from Verizon into evidence. The court also directed Con Edison's counsel to refrain from asserting at trial any arguments as to what Verizon may or may not have done at the location.
The next day, notwithstanding the Supreme Court's explicit directions, during his opening statement Con Edison's counsel informed the jury that Verizon's cables were the lowest cables attached to the pole at issue, and that the jury would see and hear evidence that "a communication wire, communication wires would be cable or telephone wires, was tied up to the Con Edison wires." The plaintiff objected and an off-the-record discussion was held. Con Edison's counsel then continued his opening statement, telling the jury that they would hear about the hierarchy of wires on utility poles, and that high voltage electrical wires are always on top, underneath that are low voltage wires of the type that go into homes, and beneath that are communication wires, including wires owned and maintained by Verizon, which are the lowest on the pole. The plaintiff again objected, and the objection was overruled. Con Edison's counsel then told the jury that it would hear from a Con Edison employee that "telephone wires have been improperly tied to the higher Con Edison wires and have pulled them down." The plaintiff again objected, and another off-the-record discussion was held at the bench.
After Con Edison's counsel completed his opening statement and the jury had exited the courtroom, the Supreme Court noted that at a sidebar it had instructed Con Edison's counsel not to mention any other specific company with respect to the communication cable that was attached to the Con Edison cable. The plaintiff's counsel contended that Con Edison's counsel had violated the court's ruling precluding Con Edison from introducing evidence of the theory that a Verizon wire or communication cable was responsible for the plaintiff's accident. The plaintiff's counsel further contended that, after she objected, the court expressly directed Con Edison's counsel not to mention Verizon, and he did so anyway. Con Edison's counsel contended that his mention of Verizon was "inadvertent," but the plaintiff's counsel insisted that Con Edison's counsel's specific reference to Verizon "was not an accident," and that Con Edison's counsel had deliberately violated the court's ruling. The court reiterated its ruling that none of the documentation from Verizon could come into evidence, and that any arguments specifically regarding what Verizon may or may not have done were improper to put before the jury. The plaintiff later moved for a mistrial on the ground that the opening remarks by Con Edison's counsel had prejudiced the plaintiff's case, and other grounds related thereto. Notably, Con Edison's counsel stated that he was "taking no position" on the motion for a mistrial, and informed the court that if a mistrial was granted, the case should be "marked off the calendar to allow for the . . . third-party action to be reinstitute[d]" against Verizon. The court denied the plaintiff's motion for a mistrial.
At the conclusion of the trial on the issue of liability, the jury issued a verdict finding [*3]that Con Edison was not negligent. The Supreme Court thereafter entered a judgment in favor of Con Edison and against the plaintiff dismissing the complaint. The plaintiff appeals. We reverse.
"Power companies have an affirmative duty to exercise reasonable care in the operation and maintenance of their power lines" (Holtz v Niagara Mohawk Power Corp., 147 AD2d 857, 858, citing Miner v Long Is. Light. Co., 40 NY2d 372, 378-379). Indeed, it is well established that the duty devolving upon a power company is of the "highest order" where the opportunity and likelihood of contact by the public is more acute because of the proximity and accessibility of high voltage power lines (Miner v Long Is. Light. Co., 40 NY2d at 379). "While the convenience of electric and telephone wires is obvious and their maintenance should not be burdened with excessive liabilities, . . . a company maintaining dangerous wires should not be relieved on the ground of expense from the affirmative duty of exercising a reasonable degree of care to maintain [those wires] and thereby [reasonably] prevent[ing] accidents" (id. [internal quotation marks omitted]). "The fundamental and general principle that a [power company], if reasonably chargeable with knowledge, or in the exercise of reasonable prudence bound to anticipate, that people may lawfully come in close proximity to its wires . . . is under obligation to exercise care to keep the latter in a safe condition is abundantly established" (id. [internal quotation marks omitted]). With respect to the issue of sagging or falling power lines, "[a]n electric power company [such as Con Edison] must use reasonable care to keep its transmission lines from falling or sagging. Where one of its lines has fallen or sagged so as to be dangerous to persons reasonably to be anticipated in the area, whether or not such condition was caused by the fault of the company, an electric power company has the duty to repair the condition or cut off the power, or both, as safety requires, within a reasonable time after it knows or in the use of reasonable care should have known of the dangerous condition and had the opportunity to remove or correct the cause of danger" (PJI 2:205 [emphasis added]; see Huscher v New York & Queens Elec. Light & Power Co., 223 NY 615, 615; Russell v New York State Elec. & Gas Corp., 276 App Div 44, 44).
"[L]itigants are entitled, as a matter of law, to a fair trial free from improper comments by counsel" (Rodriguez v City of New York, 67 AD3d 884, 886; see Ortiz v Jaramillo, 84 AD3d 766, 766). "The interest of justice thus requires a court to order a new trial where comments by an attorney for a party's adversary deprived that party of a fair trial or unduly influenced a jury" (Rodriguez v City of New York, 67 AD3d at 885; see Huff v Rodriguez, 64 AD3d 1221, 1223). Here, Con Edison's counsel improperly alluded to Verizon in his opening statement in contravention of the trial court's instruction and with blatant disregard for both the January 2019 order and the trial court's repeated instructions to him the day before and during the opening statement.
We reject Con Edison's contention that its improper and specifically prohibited reference to Verizon as the party responsible for the accident was somehow "inadvertent." On the contrary, under the circumstances of this case, we agree with the plaintiff on this appeal that the identification of Verizon by Con Edison's counsel during his opening statement was intentional and deliberate, as the utterance occurred immediately following the trial court's timely reminder to Con Edison's counsel of its prohibition against doing so; indeed, the subject had just been thoroughly debated by the parties to the trial court before the opening statements. Under the circumstances of this case, the declaration by Con Edison's counsel could not have been inadvertent. Indeed, after the plaintiff later moved for a mistrial on this ground, Con Edison's counsel effectively revealed the intentional nature of his misconduct when he again advanced Con Edison's theory that Verizon was the party responsible for the accident by taking no position on the plaintiff's motion for a mistrial and then asking the trial court to promptly mark the case off the calendar so that Con Edison could reinstitute a third-party action against Verizon. In other words, Con Edison's counsel sought to benefit from his own misconduct during his opening statement by vitiating the trial court's preclusion order and the effect of the January 2019 order which granted the plaintiff's motion to dismiss the third-party complaint without prejudice on the ground that Con Edison "knowingly and deliberately delayed filing the third-party action," which "pattern of delay" Con Edison also later attempted to "excuse[ ] . . . as an 'oversight.'"
Given the egregious nature of the violation of the trial court's ruling by Con Edison's counsel, and the likely effect on the jury, we find that the misconduct was not harmless under the [*4]circumstances of this case.
Significantly, the evidence at trial demonstrated that Con Edison was aware that communication companies, to mitigate the sagging of their own cables, sometimes improperly tied their lower hanging cables to the higher hanging Con Edison cables, causing Con Edison's high voltage cables to sag as well. Given Con Edison's heightened duty of care as a utility company (see Miner v Long Is. Light. Co., 40 NY2d at 378-379), and its particular duty to repair "sagging" "transmission lines" "whether or not such condition was caused by the fault of" Con Edison (PJI 2:205 [emphasis added]; see Huscher v New York & Queens Elec. Light & Power Co., 223 NY at 615; Russell v New York State Elec. & Gas Corp., 276 App Div 44), the improper comment by Con Edison's counsel cannot be deemed to be harmless.
Moreover, Con Edison's theory throughout the examination of witnesses and in summation was to shift blame for the fallen electrical cable away from itself and onto communication companies that have cables strung lower than Con Edison's high voltage cables. Under the circumstances, it could not have been lost on the jury that every time Con Edison's counsel used the term "communication company" during the trial, he was referring to Verizon, as he had planted that idea in the minds of the jury from the start of the trial. In this vein, Con Edison's counsel engaged in a deliberate attempt to persuade jurors to speculate that Verizon, not Con Edison, was responsible for the accident, suggesting that the plaintiff may be able to later recover from the "communications company," which Con Edison's counsel had previously identified as Verizon.
In short, the opening remarks of Con Edison's counsel improperly allowed the jury to consider whether some other entity, perhaps Verizon, not Con Edison, was liable for the plaintiff's injuries, and that it was unreasonable to expect Con Edison to inspect its cables to ensure that other entities did not use its cables in that way.
Accordingly, we find that, under the circumstances of this case, the improper comments during the opening statement by Con Edison's counsel deprived the plaintiff of a fair trial and unduly influenced the jury's determination of the issue—to wit, whether Con Edison was liable for the plaintiff's injuries (see Valenti v Gadomski, 203 AD3d 783, 786; Nieves v Clove Lakes Health Care & Rehabilitation, Inc., 179 AD3d 938, 940-941; O'Neil v Klass, 36 AD3d 677, 678).
In light of this determination, we need not reach the parties' remaining contentions.
Accordingly, we must reverse the judgment and remit the matter to the Supreme Court, Queens County, for a new trial (see Cohen v Hallmark Cards, 45 NY2d 493, 498).
DUFFY, J.P., CONNOLLY, ZAYAS and WAN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court