Skrzynski v Akebono Brake Corp. (2025 NY Slip Op 04322)

Skrzynski v Akebono Brake Corp.

2025 NY Slip Op 04322

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, DELCONTE, AND KEANE, JJ.

397 CA 24-00457

[*1]JOSEPH A. SKRZYNSKI AND DEBORAH M. SKRZYNSKI, PLAINTIFFS-RESPONDENTS,
v
AKEBONO BRAKE CORPORATION, ET AL., DEFENDANTS, AND FORD MOTOR COMPANY, DEFENDANT-APPELLANT. 

MAURO LILLING NAPARTY LLP, WOODBURY (RICHARD J. MONTES OF COUNSEL), AND BOWMAN AND BROOKE LLP, CORAL GABLES, FLORIDA, FOR DEFENDANT-APPELLANT.
MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC, NEW YORK CITY (JOSH MCMAHON OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

 Appeal from a judgment of the Supreme Court, Erie County (Edward Pace, J.), entered February 28, 2024 in a personal injury action arising from exposure to asbestos. The judgment awarded plaintiff Joseph A. Skrzynski money damages against defendant Ford Motor Company upon a jury verdict. 
It is hereby ORDERED that the judgment so appealed from is affirmed without costs.
Memorandum: Plaintiffs commenced this action seeking damages for injuries Joseph A. Skrzynski (plaintiff) sustained as a result of his exposure to asbestos contained in, inter alia, friction products manufactured, distributed, or supplied by Ford Motor Company (defendant). Defendant moved for summary judgment dismissing the complaint against it and plaintiff opposed the motion. Supreme Court granted in part and denied in part defendant's motion and, inter alia, dismissed plaintiffs' derivative cause of action. The matter proceeded to a jury trial, at which evidence was adduced establishing that plaintiff was exposed to such products, including brakes containing asbestos, while working at an automobile dealership. Plaintiff proceeded under a failure to warn theory. Following the trial, the jury returned a verdict finding, among other things, that plaintiff was exposed to asbestos as a component of defendant's friction products, that defendant failed to exercise reasonable care in providing an adequate warning to plaintiff of the hazards of exposure to asbestos fibers from defendant's friction products, and that such failure to adequately warn was a substantial contributing factor in causing his mesothelioma.
Thereafter, defendant moved, pursuant to CPLR 4404 (a), for, among other things, judgment as a matter of law, a new trial based on alleged evidentiary errors, and to set aside the verdict as against the weight of the evidence. The court denied the motion and a judgment was entered in favor of plaintiff against defendant. Defendant appeals, contending that the evidence presented at trial was legally insufficient to establish specific and general causation, and that the court erred in denying defendant's pretrial motion for summary judgment dismissing the second amended complaint against it.
Initially, we note that the court's order denying in part defendant's pretrial motion for summary judgment is not reviewable on this appeal because, insofar as defendant challenges that order, the order did not "remove any issues from the case," and it therefore did not necessarily affect the final judgment (Bonczar v American Multi-Cinema, Inc., 38 NY3d 1023, 1026 [2022], rearg denied 38 NY3d 1170 [2022]; see Reed v Town of Amherst, 221 AD3d 1454, 1455 [4th Dept 2023]; see generally CPLR 5501 [a] [1]).
On appeal, defendant principally contends that it was entitled to a directed verdict dismissing the second amended complaint against it as a matter of law (see CPLR 4404 [a]) on the basis that there was legally insufficient evidence to establish the element of causation (see generally Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]). In that context, "the relevant inquiry [is] whether there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Campbell v City of Elmira, 84 NY2d 505, 509 [1994] [internal quotation marks omitted]). "When it can be said that it would not be utterly irrational for a jury to reach the result it . . . determined . . . , the court may not conclude that the verdict is as a matter of law not supported by the evidence" (id. at 510 [internal quotation marks omitted]). In other words, compared to weight of the evidence review, the "utterly irrational" test applicable in the context of a legal sufficiency challenge is "a harsher and more basic assessment of the jury verdict" where "the result of such an inquiry is of considerably greater significance than is a determination that a factual conclusion is against the weight of the evidence, for in the former case the result is a final judgment, while in the latter the result must be merely a new trial" (Cohen, 45 NY2d at 498-499). Inasmuch as defendant's contentions on appeal are limited to the issue of causation, we assume, arguendo, that plaintiff was exposed to asbestos as a component of defendant's friction products and that defendant failed to exercise reasonable care in providing an adequate warning to plaintiff of the hazards of exposure to asbestos fibers from defendant's friction products (see Pagels v Mullen, 167 AD3d 185, 187 [4th Dept 2018]; see also Gates v Simpson, — AD3d &mdash, — [July 25, 2025] [4th Dept 2025]; Scutella v Dill, — AD3d &mdash, — [July 25, 2025] [4th Dept 2025]).
Addressing defendant's contentions concerning the sufficiency of the trial evidence on the issue of causation, it is well established that, in cases involving exposure to asbestos or other toxins, " 'an opinion on causation should set forth a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)' " (Nemeth v Brenntag N. Am., 38 NY3d 336, 342-343 [2022], quoting Parker v Mobil Oil Corp., 7 NY3d 434, 448 [2006], rearg denied 8 NY3d 828 [2007]). " '[I]t is not always necessary for a plaintiff to quantify exposure levels precisely or use the dose-response relationship, provided that whatever methods an expert uses to establish causation are generally accepted in the scientific community' " (id. at 343, quoting Parker, 7 NY3d at 448). Indeed, "there may be several ways" for an expert to demonstrate causation, but "any method used must be 'generally accepted as reliable in the scientific community' " (id., quoting Parker, 7 NY3d at 449).
First, we conclude that the trial evidence is legally sufficient to establish general causation. At trial, plaintiff called a professor of epidemiology (professor), who testified about his research, including his 2011 publication and its conclusion. He testified with respect to his approach, including his review of studies, which supported his conclusion that "chrysotile asbestos causes mesothelioma." The professor reviewed case reports and epidemiology studies from all over the world, which included studies of chrysotile asbestos in automotive friction products. Plaintiff also called an environmental scientist (scientist), who tested defendant's brakes to assess their asbestos composition, whether asbestos fibers protrude from their surfaces, and how many asbestos fibers are released during sanding or cleanup. The scientist's tests showed, inter alia, that defendant's brakes contained between 25% and 50% chrysotile asbestos fibers and that handling defendant's brakes created asbestos dust. We conclude that the scientist's testimony coupled with the professor's testimony sufficiently established that the chrysotile asbestos from brakes is capable of causing peritoneal mesothelioma.
We further conclude that the evidence is legally sufficient to establish specific causation. To establish specific causation, plaintiff was required to show that he "was exposed to sufficient levels of the toxin to cause" his alleged injuries; we note that "it is not always necessary for a plaintiff to quantify exposure levels precisely or use the dose-response relationship" (Matter of Eighth Jud. Dist. Asbestos Litig., 187 AD3d 1623, 1623-1624 [4th Dept 2020]). The scientist's testing of defendant's products provided scientifically backed levels of the toxin to which plaintiff may have been exposed. The scientist determined that sanding released asbestos fibers at a rate of 0.8 to 2.2 fibers per cubic centimeter in the breathing zone of the worker, with lower rates farther away from the work. Cleaning up dust with compressed air resulted in a recorded exposure level of 0.9 fibers per cubic centimeter, and sweeping after brake work was done produced a recorded exposure level of 1.7 fibers per cubic centimeter. Plaintiff also testified [*2]with respect to his actual exposure to defendant's products. Although plaintiff worked as a parts driver and clerk, plaintiff testified that he usually took breaks in the garage with the mechanics and that, when he was not delivering parts, he was usually in the garage. Plaintiff believed that he was present for "over a thousand" brake jobs. He was in the garage "two hours or more" each workday, and he described the garage as "filthy," "[d]irty," and "dusty."
Notably, "it is also possible that more qualitative means could be used to express a plaintiff's exposure[, and c]omparison to the exposure levels of subjects of other studies could be helpful" where there is a specific comparison between a plaintiff and the other subjects (Parker, 7 NY3d at 449). To that end, the jury also heard evidence regarding a study that estimated exposure to garage workers. The professor testified that a garage worker's exposure could be estimated at 0.2 "fiber years" or, in other words, total dose exposure. The professor noted that the 0.2 "fiber years" corresponded with research on increased risk of developing mesothelioma. A physician that plaintiff called at trial thereafter testified that the professor's 0.2 fiber years figure is comparable to plaintiff's exposure from defendant's products and that, to a reasonable degree of medical certainty, that type of cumulative exposure was a substantial factor in causing plaintiff's mesothelioma.
Based on the foregoing, we conclude that inasmuch as there "is a valid line of reasoning and permissible inferences that could lead rational persons to the conclusion reached by the jury based upon the evidence presented at trial" (Eighth Jud. Dist. Asbestos Litig., 187 AD3d at 1623; cf. Matter of New York City Asbestos Litig., 148 AD3d 233, 240 [1st Dept 2017], affd 32 NY3d 1116 [2018]), the jury's verdict satisfies "the minimal 'not utterly irrational' appellate review test" (Campbell, 84 NY2d at 510).
All concur except Lindley, J.P., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent. As the majority correctly notes, it is well established that, in cases involving exposure to asbestos or other toxins, "an opinion on causation should set forth a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)" (Parker v Mobil Oil Corp., 7 NY3d 434, 448 [2006], rearg denied 8 NY3d 828 [2007]; see Nemeth v Brenntag N. Am., 38 NY3d 336, 342-343 [2022]). Here, I do not believe that Joseph A. Skrzynski (plaintiff) established general causation, i.e., that exposure to chrysotile asbestos as a component of friction products can cause peritoneal mesothelioma, nor did plaintiff meet his burden of proof on specific causation, i.e., that he was exposed to sufficient levels of chrysotile asbestos to cause peritoneal mesothelioma. Thus, in my view, there is "no valid line of reasoning and permissible inferences [that] could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial," and the verdict should be set aside on the ground that it is not supported by legally sufficient evidence (Matter of New York City Asbestos Litig., 89 NY2d 955, 956 [1997]; see Nemeth, 38 NY3d at 342; Matter of New York City Asbestos Litig., 148 AD3d 233, 235 [1st Dept 2017] [Juni], affd 32 NY3d 1116 [2018]).
As in Nemeth, plaintiff's experts offered only "conclusory assertions of causation" that are insufficient to establish that his exposure to asbestos through products manufactured, distributed, or supplied by Ford Motor Company (defendant) was a proximate cause of his mesothelioma (38 NY3d at 345). Although one of plaintiff's experts, a professor of epidemiology (professor), testified that mesothelioma is caused by asbestos, including chrysotile asbestos and peritoneal mesothelioma specifically, that professor offered no epidemiological evidence showing that chrysotile asbestos found in defendant's automotive friction products was capable of causing peritoneal mesothelioma. The professor relied on a case control study, which he described as an attempt to "start with the disease" and "try to reconstruct what happened in the past, retrospectively," and which established only, in his words, that "all types of asbestos of all sizes . . . seemed to be related to mesothelioma." That is not enough to establish general causation (see Sean R. v BMW of N. Am., LLC, 26 NY3d 801, 810 [2016]; Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d 762, 782-783 [2014], rearg denied 23 NY3d 996 [2014]).
The professor's further reliance on his own 2011 article is similarly insufficient because only two of the many studies cited therein dealt with chrysotile asbestos in automotive friction products; one was a single case report involving a career mechanic, and the other was a case report of six individuals who worked at an asbestos plant that manufactured automotive friction [*3]products. Such reliance on anecdotal data and inference does not comport with the standards of Parker (see 7 NY3d at 450; see also Juni, 148 AD3d at 238-239). Plaintiff also called a physician, whose testimony was not appreciably different from what that same physician offered in Nemeth, which the Court of Appeals found wanting (see 38 NY3d at 344-345). Nor did plaintiff's remaining experts establish the requisite causal link between peritoneal mesothelioma and asbestos from automotive friction products.
In sum and substance, plaintiff's experts assumed that, because asbestos in general can cause mesothelioma, the same must be true for chrysotile asbestos found in automotive friction products. That is the type of assumption rejected by the Court of Appeals in Parker, and I conclude that, as in Nemeth and Juni, the evidence here was legally insufficient to establish general causation.
In any event, even assuming, arguendo, that plaintiff presented sufficient evidence of general causation, I conclude that the verdict should nevertheless be set aside because plaintiff failed to establish specific causation. In an attempt to establish that he was exposed to sufficient levels of chrysotile asbestos to cause peritoneal mesothelioma, plaintiff relied on exposure estimates made by the professor, who adopted from literature a mean exposure to asbestos of 0.04 fibers per cubic centimeter (f/cc) years for career brake mechanics, and speculated that this figure could accurately estimate plaintiff's dose. He then multiplied the 0.04 f/cc by the five years plaintiff worked at a Ford dealership to arrive at a lifetime dosage of 0.20 f/cc years.
However, the testimony reflects that 0.04 f/cc is the mean exposure to asbestos for career mechanics who work on brakes eight hours a day every day, and plaintiff was not a brake mechanic, much less a career brake mechanic. Instead, plaintiff worked in the parts department at the dealership. He spent four years primarily delivering parts and one year at the counter in the parts department, which was down the hall from the garage where some mechanics were at times doing brake work, among other things. When asked if .04 f/cc could be used as a reliable estimate of plaintiff's exposure to chrysotile asbestos, even though plaintiff admittedly was only sporadically in the garage and never directly working on brakes himself, the professor answered, "I don't know about accurate, but it is an estimate, so let's try it." Because that estimated exposure level was not remotely consistent with plaintiff's actual work history, the professor's use of that estimate cannot qualify as a "scientific method" capable of establishing specific causation in this case (Juni, 148 AD3d at 236; see Parker, 7 NY3d at 449; see also Dyer v Amchem Prods. Inc., 207 AD3d 408, 413-414 [1st Dept 2022]).
The same is true of the physician's approach, which simply imported exposure estimates from scientific literature as support for a flat assertion that plaintiff's asbestos exposure was both "significant" and "significantly above ambient asbestos levels," and which was rejected by the Court of Appeals in Nemeth (see 38 NY3d at 344-346; see also Matter of New York City Asbestos Litig., 207 AD3d 415, 416 [1st Dept 2022], lv denied 39 NY3d 913 [2023], rearg denied 40 NY3d 1007 [2023]).
The need for plaintiff to establish a causal link between his mesothelioma and his exposure to chrysotile asbestos from defendant's product was particularly important in light of evidence of other potential causes of his illness. For example, plaintiff acknowledged that he could have been exposed to asbestos while living for 25 years with his father, who worked at the Bethlehem Steel plant in Lackawanna, New York, where asbestos was present. Plaintiff himself worked at Bethlehem Steel for three years, and he was also exposed to asbestos while renovating the basement of his childhood home. More recently, plaintiff received 42 consecutive days of radiation treatment for prostate cancer, which one of plaintiff's experts acknowledged could have caused his mesothelioma.
Based on the foregoing, I would reverse the judgment, grant defendant's postverdict motion insofar as it sought to set aside the verdict based on legally insufficient evidence, and dismiss the second amended complaint against it.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court